UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:

SCARBOROUGH-ST. JAMES CORPORATION, et al.,

Debtors.

Chapter 11

Case No. 03-17966 (JMP)

(Jointly Administered)

---

### AMENDED ORDER ON DEBTORS' JOINT MOTION FOR AN ORDER AUTHORIZING DEBTOR TO INCUR POSTPETITION SECURED INDEBTEDNESS, GRANT SECURITY INTERESTS AND SUPER PRIORITY CLAIMS AND PROVIDE ADEQUATE PROTECTION PURSUANT TO SECTIONS 361, 363 AND 364 OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

Upon the joint motion (the "Motion")[1] of Scarborough-St James Corporation ("SSJC"), First Richborough Realty Corporation ("FRRC") and Richmond Realty Limited Partnership ("RRLP"), collectively, the debtors and debtors-in-possession in these Chapter 11 cases (the "Debtors"), for entry of an order authorizing RRLP (i) to incur post-petition secured indebtedness pursuant to a credit agreement (the "DIP Loan Agreement")[2] dated January 11, 2007, by and between RRLP and Madison Realty Capital L.P. (the "Lender"), and (ii) to grant a security interest and a Superpriority claim pursuant to sections 105(a) and 364(c) and (d) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and having requested that:

---

[1] All terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or the DIP Loan Agreement, as defined below, as applicable.

[2] The DIP Loan Agreement and the other agreements, instruments and other documents executed in connection therewith are collectively referred to herein as the "DIP Loan Documents."

(a) the Court authorize RRLP, pursuant to sections 105(a) and 364(c) and (d) of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014, to obtain from the Lender, advances up to an aggregate principal amount of $3,100,000 (the "DIP Loan"), with such advances to be made in accordance with the DIP Loan Agreement annexed to the Motion. RRLP will use the proceeds of the DIP Loan to finance its working capital and other general corporate purposes (including the repayment of approximately $2,000,000 to satisfy the Warren Bank and Carmen Liens and $450,000 to SSJC in partial satisfaction of the SSJC Lien), and to pay transaction costs in connection with the DIP Loan Documents;

(b) the Court issue an Order, pursuant to sections 364(c)(1), (2) and 364(d)(1) of the Bankruptcy Code, that the obligations of RRLP under the DIP Loan Agreement (the "DIP Obligations") (i) be granted Superpriority administrative expense status, having priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and (ii) be secured by perfected first priority security interests in and lens on all unencumbered pre-petition and post-petition property of RRLP excluding the Avoiding Power Causes of Action (the "Assets"), and (iii) be secured by perfected priming liens on all Assets, priming all existing secured creditors, including without limitation, Warren Bank, Carmen, SSJC, FRRC, MCANY II, BLG, C&R or RGE, provided, however, that the claims and liens arising under clauses (i), (ii) and (iii) above are subject to the Carve-Out, as described below;

(c) the Court issue an Order approving the adequate protection regime structured by RRLP to protect the Pre-petition Lenders for any diminution in the value of their interests that occurs as a result of the granting of the Priming Liens as set forth in the Motion;

(d) the Court conduct a hearing to consider approval of the post-petition financing pursuant to the DIP Loan Agreement and authorizing RRLP to obtain advances thereunder in an aggregate principal amount of up to $3,100,000;

the Court finds, pursuant to Bankruptcy Rule 4001(c)(1), that notice of the Hearing given to (a) counsel for the Lender, (b) counsel to Warren Bank, (c) counsel to Carmen, (d) counsel for SSJC and FRRC; (e) counsel to BLG; (f) counsel to C&R; (g) counsel to RGE; (h) the twenty (20) largest unsecured creditors, (i) all known creditors who have a lien against RRLP's assets, (j) the Internal Revenue Service, (k) all state and local taxing authorities in the locations where RRLP conducts business, (l) the United States Attorney and (l) the United States Trustee (the "US Trustee") (collectively, the "Notice Parties") was good and sufficient under the particular circumstances and no other or further notice is or shall be required; and

based upon all of the pleadings filed with the Court, the evidence presented and the arguments of counsel made at the hearing on the Motion; and the Court having noted the appearances of all parties in-interest; and all objections to the interim relief requested in the Motion having been withdrawn, resolved, or overruled by the Court, and it appearing that the relief requested in the Motion is in the best interests of RRLP, its estate and its creditors, and such relief is essential for the operation of the Debtors' businesses; and it further appearing that RRLP is unable to obtain unsecured credit for money borrowed allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code or other secured financing on equal or more favorable terms than those set forth in the DIP Loan Documents; and upon the record herein; and after due deliberation thereon; and sufficient cause appearing therefor;

**IT IS HEREBY FOUND, DETERMINED, ORDERED, ADJUDGED, AND DECREED THAT:[3]**

1. Disposition. The Motion is granted in its entirety on the terms of this Order. Any objections to the relief sought in the Motion that have not previously been resolved or withdrawn are hereby overruled on their merits. This Order shall be valid, binding on all parties-in-interest and fully effective immediately upon entry.

2. Jurisdiction; Venue. The Court has jurisdiction over these Chapter 11 Cases, the parties, and the Debtors' property pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D). Venue of these Chapter 11 Cases and the Motion is proper under 280 U.S.C. §§ 1408 and 1409.

3. Purpose and Necessity of Financing. RRLP requires the financing described in the Motion to fund its operations pending a sale of some or all of the Shopping Center pursuant to a Plan of Reorganization. RRLP is unable to obtain adequate unsecured credit allowable under section 503 of the Bankruptcy Code as an administrative expense or other financing under sections 364(c) or (d) of the Bankruptcy Code on equal or more favorable terms than those set forth in the DIP Loan Documents within the time frame required by its needs to avoid immediate and irreparable harm. A loan facility in the amount and in the manner provided by the DIP Loan Documents is not available to the Debtors, generally, without granting to the Lender pursuant to sections 364(c)(1),(2) and 364(d) of the Bankruptcy Code, the following: (i) superpriority administrative expense status, having priority over any and all administrative expenses of the kind specified in, or arising or ordered under sections 503(b) and 507(b) of the Bankruptcy Code, and (ii) first priority, perfected security interests in and liens on all Assets, (iii) secured by

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

perfected priming liens on all Assets, priming all existing secured creditors, including without limitation, Warren Bank, Carmen, SSJC, FRRC, MCANY II, BLG, C&R or RGE, provided, however, that the claims and liens arising under clauses (i), (ii) and (iii) above are subject to the Carve-Out. After considering all the alternatives, RRLP has concluded in the exercise of its prudent business judgment that the loan facility provided under the DIP Loan Documents represents the best financing available to RRLP.

4. Good Cause. RRLP's ability to obtain sufficient liquidity under the DIP Loan Documents is vital to the Debtors' estates and their creditors because the Debtors need to continue to operate their businesses pending a sale of some or all of the Shopping Center pursuant to a Plan of Reorganization. The preservation of the going concern value of the Debtors' businesses is the linchpin to any successful reorganization. Good cause thus has been shown for the relief sought in the Motion.

5. Good Faith. The terms of the DIP Loan Documents, including the interest rates and fees applicable thereto, are at least as or more favorable to RRLP as those available from alternative sources. Based upon the record before the Court, the DIP Loan Documents have been negotiated in good faith and at arm's-length between RRLP and the Lender. The DIP Loan and other financial accommodations made to RRLP by the Lender pursuant to this Order, the DIP Loan Agreement and the other DIP Loan Documents shall be deemed to have been extended by the Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the Lender shall be entitled to all protections afforded thereby. The terms of the loan facility provided under the DIP Loan Documents are fair and reasonable, reflect RRLP's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

6. Superpriority Claim and Lien Priority.

(a) The Lender is hereby granted an allowed superpriority administrative expense claim (the "Superpriority Claim") pursuant to section 364(c)(1) of the Bankruptcy Code in the aggregate principal amount of up to $3,100,000, together with all interests, fees and other amounts payable pursuit to the DIP Loan Documents, having priority over any and all administrative expenses of the kind specified in or arising under sections 503(b) and 507(b) (except as otherwise expressly provided for in the Carve-Out). The Superpriority Claim does not extend to proceeds from Avoiding Power Causes of Action.

(b) Further, as security for the DIP Obligations, in accordance with the terms of the DIP Loan Documents and this Interim Order, effective immediately, the Lender is hereby granted a first priority, perfected security interests in and liens on all unencumbered pre-petition and post-petition property of RRLP (excluding the Avoiding Power Causes of Action).

(c) As security for the DIP Obligations, in accordance with the terms of the DIP Loan Documents and this Interim Order, effective immediately, the Lender is hereby granted, pursuant to sections 364(c) and (d) of the Bankruptcy Code, perfected priming liens in the Assets (the "Post-Petition Liens"), senior in all respects to any and all present and future liens, claims, interests or encumbrances, if any, including, without limitation, any and all pre-petition and post-petition liens and security interests held by Warren Bank, Carmen, SSJC, FRRC, MCANY II, BLG, C&R or RGE, as further described in the DIP Loan Agreement.

(d) No lien or security interest granted to the Lender under this Order or the DIP Loan Documents, as approved by this Order, shall (i) be subject to any lien or security interest that is avoided and preserved for the benefit of RRLP's estate under section 551 of the Bankruptcy Code or (ii) hereafter be subordinated to or made *pani passu* with any other lien or

6

security interest pursuant to sections 364(c) or (d) of the Bankruptcy Code or otherwise. The Post-Petition Liens arising hereunder shall be and hereby are fully perfected security interests, such that no additional steps need be taken by the Lender to perfect such interests.

(e) The Post-Petition Liens and Superpriority Claim granted to the Lender under this Order shall continue in this and in any superseding case for RRLP under any chapter of the Bankruptcy Code, and such liens and security interests shall maintain their priority as provided in this Order until all the DIP Obligations have been paid in full, with the proviso that such Post-Petition Liens and Superpriority Claim shall not alter the priority scheme of Bankruptcy Code section 72 6(b). In addition, except as otherwise set forth herein, and in furtherance of the rights of the Lender under the DIP Loan Documents and this Order, neither Warren Bank, Carmen, SSJC, FRRC, MCANY II, BLG, C&R nor RGE, nor any of their successors or assigns, shall seek to enforce, or otherwise exercise any of their rights and remedies in respect of, the liens held by them in any of the Assets unless and until the DIP Obligations have been indefeasibly paid in full and the DIP Loan Documents have been terminated.

7. Adequate Protection. The adequate protection regime proposed by RRLP in the Motion is approved as follows:

(a) Property Taxes. RRLP is directed to place a portion of the DIP financing proceeds, $85,000.00, into an escrow account controlled by its counsel for the purpose of paying any unpaid real property taxes which were due as of the RRLP Petition Date (the "Unpaid Taxes"). The Macomb County Michigan Treasurer's Office and the Office of the City Treasurer for the City of Richmond, Michigan are hereby granted a replacement lien on such account in an amount sufficient to cover the Unpaid Taxes. Once the Unpaid Taxes are paid, any remaining amounts in this account shall be returned to RRLP

for the purpose of paying administrative and general operating expenses in these bankruptcy cases. RRLP shall settle an order relating to the payment of the property taxes.

(b) Warren Bank Lien/Carmen Lien. RRLP is directed to place a portion of the DIP financing proceeds, $2,348,269.20, into an escrow account controlled by its counsel for the purpose of paying the Warren Bank Lien (the "Loan Repayment"). Any payment to Warren Bank by RRLP shall have the effect of reducing, on a dollar for dollar basis, any liability owed by RRLP under both the Warren Bank Lien and the Carmen Lien subject to a right of Carmen to review and object to the ultimate payment by RRLP to Warren Bank and, upon full payment of the Warren Bank Lien, all security documents executed by RRLP in favor of either Warren Bank or Carmen in connection with the Warren Bank Liens shall be cancelled and deemed null and void, except for the Carmen Mortgage, defined as that certain Commercial Wrap Mortgage from RRLP to Carmen, filed of record August 6, 2004 in Liber 15738, page 689, in the original principal amount of $2,000,000.00, which Carmen Mortgage is subordinated by this Order to the Post-Petition Liens and Superpriority Claims granted to the Lender, and which Carmen Mortgage shall continue to secure any and all additional amounts determined to be due to Carmen under the Carmen Lien as shall be set forth in a further Order of this Court after conclusion of any claims allowance process. Moreover, if at some future date Carmen shall determine that changed circumstances have left it not adequately protected, it may make an appropriate motion addressing this issue. Warren Bank is hereby granted a replacement lien on this account and, immediately upon the funding of this account, any security interest of Warren Bank or Carmen in the leases, rents or profits from the

Shopping Center shall cease and such rents and profits shall thereafter be paid pursuant to the Intermediate Lease and Servicing Agreement, as set forth in this Court's August 9, 2006 Order approving that certain June 26, 2006 Stipulation Resolving Claims, except with respect to the rents paid by Kmart, which shall be paid in accordance with the DIP Loan Agreement. RRLP shall settle an order relating to the payment of the Loan Repayment.

(c) SSJC Lien. RRLP is directed to pay, upon the closing of the DIP Loan, a portion of the DIP financing proceeds, $450,000.00, to SSJC as partial satisfaction of the SSJC Lien. This payment shall not alter the continued effect of the SSJC Lien on the Shopping Center, as primed, by the Lender's Superpriority liens granted herein.

8. Acknowledgements. In providing for post-petition financing under the DIP Loan Agreement, RRLP acknowledges, represents, stipulates and agrees that:

(a) RRLP has obtained all authorizations, consents and approvals required to be obtained from, and has made all filings with and given all notices required to be made or given to, all federal, state and local governmental agencies, authorities and instrumentalities in connection with the execution, delivery, performance, validity and enforceability of the DIP Loan Documents to which RRLP is a party;

(b) in entering into the DIP Loan Documents, and as consideration therefor, RRLP hereby agrees that until such time as all DIP Obligations are indefeasibly paid in full in accordance with the DIP Loan Agreement, RRLP shall not in any way prime or seek to prime the liens provided to the Lender under this Order or the DIP Loan Documents in the Collateral by offering a subsequent lender or a party-in-interest a superior or *pani passu* lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise;

(c) in entering into the DIP Loan Documents, and as consideration therefor, RRLP hereby agrees that until such time as all DIP Obligations are indefeasibly paid in full in accordance with the DIP Loan Agreement, RRLP shall not in any way or at any time, suffer to exist a priority for any administrative expense or unsecured claim against RRLP of any kind or nature whatsoever, including without limitation any administrative expenses of the kind specified in, or arising or ordered under, sections 503(b) and 507(b) of the Bankruptcy Code equal or superior to the priority of the Lender in respect of the DIP Obligations, as provided herein;

(d) there are no other liens on or security interests in the Collateral except for the Permitted Liens and the liens held by the Lender.

9. Fees. All fees payable and costs and/or expenses reimbursable under the DIP Loan Agreement and other DIP Loan Documents by RRLP to the Lender, are hereby approved and shall be promptly paid in full by RRLP in accordance with this Order and the DIP Loan Documents, and RRLP is hereby authorized to pay all such fees without the necessity of RRLP or the Lender filing any further application with the Court for approval or payment of such fees or expenses. All fees and costs and/or expenses payable by RRLP in connection with the recording, filing and insuring of financing statements, mortgages and financing statements, if any, to confirm the perfection of the security interests granted or authorized by this Order are hereby approved and shall be promptly paid in full by RRLP without the necessity of RRLP or the Lender filing any further application with the Court for approval or payment of such fees, costs and/or expenses.

10. Authority to Execute and Deliver Necessary Documents. RRLP is hereby authorized and empowered to enter into and deliver the DIP Loan Agreement in the form annexed hereto and the other DIP Loan Documents. RRLP is hereby further authorized,

empowered and directed (a) to perform all of its obligations under the DIP Loan Documents and such other agreements as may be required by the DIP Loan Documents to give effect to the terms of the financing provided for in the DIP Loan Documents as approved by this Order, (b) to perform all acts required under the DIP Loan Documents and this Order, including, without limitation, and when applicable, the payment of all principal, interest, charges, fees, and the reimbursement of present and future reasonable costs and expenses paid or incurred by the Lender as provided for in this Order, the DIP Loan Agreement, and the other DIP Loan Documents, all of which unpaid principal, interest, charges, fees and the reimbursement of present and future reasonable costs and expenses shall be included and constitute part of the principal amount of the DIP Obligations, be deemed a Superpriority Claim having the same priority as all other DIP Obligations hereunder and be secured by a first priority lien on and security interest in all of the Collateral as and to the extent provided for in this Interim Order, the DIP Loan Agreement, and the other DIP Loan Documents, and (c) to do and perform all other acts, to make, execute and deliver all other instruments, agreements and documents, which may be required or necessary for RRLP to perform all of its obligations under this Order and the DIP Loan Documents, without further order of the Court. The DIP Obligations shall constitute valid and binding obligations of RRLP in accordance with the terms of this Order.

11. Amendments. RRLP, only with the express written consent of the Lender, may enter into any amendments or modifications to the DIP Loan Agreement and the other DIP Loan Documents without the need of further notice and hearing or order of this Court, provided that (i) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest, (ii) notice of any such amendment or modification is filed with the Court, and (iii) notice of any such amendment or modification (other than those which in the

reasonable view of RRLP are ministerial, technical or do not adversely affect RRLP), if any, are provided in advance to all parties having filed a notice of appearance pursuant to Bankruptcy Rule 2004 that was entered on the docket prior to the date of the filing of such amendment or modification with the Bankruptcy Court, and the Office of the U.S. Trustee.

12. Carve-Out Expenses. A Carve-Out from the liens and claims granted to the Lender will apply in the following circumstances: (a) in the event of the occurrence and during the continuance of an Event of Default (as defined in the DIP Loan Agreement), the payment of (i) accrued and unpaid professional fees and disbursements theretofore incurred as of the occurrence and during the continuance of an uncured or un-waived Event of Default, and (ii) professional fees and disbursements incurred during the time of such continuance in an aggregate amount not in excess of $200,000, by RRLP and allowed by an order of the Bankruptcy Court under §§330 and 331 of the Bankruptcy Code; (b) the payment of unpaid fees pursuant to 28 U.S.C. § 1930 and to the Clerk of the Bankruptcy Court (the "UST/Clerk Fees"); and (c) and reasonable fees and expenses of a trustee under Bankruptcy Code section 726(b). The DIP Loan Agreement provides that so long as no Event of Default (or event which with the giving of notice or lapse of time or both would constitute an Event of Default) has occurred, RRLP will be permitted to pay compensation and reimbursement of expenses allowed and payable under §§330 and 331 of the Bankruptcy Code, as the same may be due and payable, and the same shall not reduce the Carve-Out.

13. Additional Perfection Measures. The liens, security interests, and priorities granted to the Lender pursuant to this Order and the DIP Loan Documents with respect to certain property of RRLP's estate shall be perfected by operation of law immediately upon entry of this Order by the Court. Neither RRLP nor the Lender shall be required to enter into or to obtain

landlord waivers, mortgagee waivers, bailee waivers or warehouseman waivers, if any, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including, trademark, copyright, tradename or patent assignment filings with the United States Patent and Trademark Office, Copyright Office, or any similar agency with respect to intellectual property), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the security interest and Post-Petition Liens granted pursuant to this Order. If the Lender, in its sole discretion, chooses to obtain consents from any licensor or similarly situated party-in-interest, to file financing statements, notices of lien or similar instruments, to record financing statements, mortgages or deeds of trust, or to otherwise confirm perfection of such security interests and liens: (a) the Lender is authorized and empowered to file or record financing statements, mortgages, deeds of trust or similar instruments which secure the DIP Obligations up to the aggregate principal amount of $3,100,000, together with all interests, fees and other amounts payable pursuant to the DIP Loan Documents; (b) all such documents shall be deemed to have been recorded and filed as of the time and on the date of entry of this Order; and (c) no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder. In lieu of obtaining such consents or filing such financing statements, notices of lien or similar instruments, the Lender may, at its sole discretion, choose to file a true and complete copy of this Order in any place at which any such instruments would or could be filed, together with a description of the Collateral located within the geographic area covered by such place of filing, and such filing by the Lender shall have the same effect as if such financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of this Order.

14. Payment of Administrative Expenses. Notwithstanding the foregoing, RRLP shall be permitted to pay, as the same may become due and payable, but solely to the extent permitted by the DIP Loan Documents, (i) administrative expenses of the kind specified in section 503(b) of the Bankruptcy Code incurred in the ordinary course of its business, (ii) payments pursuant to "first day" orders entered by this Court, (iii) compensation and reimbursement of expenses to professionals allowed and payable under section 331 of the Bankruptcy Code, and (iv) subject to the requirements of the Bankruptcy Code, any other administrative expenses and payments permitted under the DIP Loan Agreement.

15. Access to Information. Without limiting the rights of access and information afforded to the Lender under the DIP Loan Agreement and other DIP Loan Documents, RRLP shall permit representatives, agents and/or employees of the Lender to have reasonable access to its premises and its records during normal business hours (without unreasonable interference with the proper operation of RRLP's business) and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request.

16. Cash Management System. RRLP is authorized and directed to maintain its cash management system in a manner consistent with the DIP Loan Documents.

17. Automatic Stay Modified. The automatic stay provisions of section 362 of the Bankruptcy Code are, to the extent applicable, vacated and modified to the extent necessary so as to permit the Lender:

(a) upon the occurrence and during the continuance of an Event of Default under the DIP Loan Documents, or any violation of a provision of this Order, and after thirty (30) business days' prior written notice to the counsel for Debtors, Carmen and the United States Trustee (such thirty (30) day period shall be inclusive of any notice of non-payment provided to Debtor prior to an Event of Default under the DIP Loan Documents), to declare all or any portion of the DIP Loan then outstanding to be immediately due and payable and exercise all other enforcement

rights and remedies provided for in the DIP Loan Agreement, the other DIP Loan Documents, this Order, or under other applicable bankruptcy and non-bankruptcy law without requiring prior authorization of this Court in order to exercise such rights and remedies. The automatic stay of section 3 62(a) of the Bankruptcy Code, to the extent applicable, shall be deemed terminated as provided herein without the necessity of any further action by the Court in the event that the Debtors and/or the U.S. Trustee have not obtained an order from this Court to the contrary within such thirty (30) business days after receiving such notice from the Lender pursuant to this Order, provided, however, that such thirty (30) day period shall be inclusive of any notice of non-payment provided to Debtor prior to an Event of Default under the DIP Loan Documents. The Debtors and/or the U.S. Trustee shall have the burden of proof at any hearing on any request by them to re-impose or continue the automatic stay of section 3 62(a) of the Bankruptcy Code or to obtain any other injunctive relief, and the only issue that may be raised at any such hearing shall be whether, in fact, an Event of Default has occurred and is continuing;

(b) this Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Interim Order and relating to the application, re-imposition or continuance of the automatic stay of section 3 62(a) of the Bankruptcy Code or other injunctive relief requested;

(c) upon the occurrence and during the continuance of an Event of Default under the DIP Loan Documents, the Lender may, without providing any prior notice thereof, immediately charge default interest at the rate set forth in the DIP Loan Agreement; and

18. Successors and Assigns. The DIP Loan Documents and the provisions of this Order shall be binding upon the Lender, RRLP and their respective successors and assigns, and shall inure to the benefit of the Lender and RRLP and their respective successors and assigns including, without limitation, any trustee, responsible officer, examiner with expanded powers, estate administrator or representative, or similar person appointed in a case for RRLP under any chapter of

the Bankruptcy Code.

19. No Third Party Beneficiary. Except with respect to the Debtors, the Lender, its delegates, successors and assigns, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

20. Binding Nature of Agreement. Each of the DIP Loan Documents to which RRLP is and will become a party shall constitute legal, valid and binding obligations of RRLP, enforceable against RRLP in accordance with their terms. The DIP Loan Documents have been or will be properly executed and delivered to the Lender by RRLP. The rights, remedies, powers, privileges, liens and priorities of the Lender provided for in this Interim Order and in any other DIP Loan Documents shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order) or by any plan of reorganization or liquidation in this case or in any subsequent case under the Bankruptcy Code, unless and until the DIP Obligations have first been paid in full and completely satisfied.

21. Subsequent Reversal or Modification. This Order is entered pursuant to section 364 of the Bankruptcy Code, granting the Lender all protections afforded by section 364(e) of the Bankruptcy Code. If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, that action will not affect (a) the validity of any obligation, indebtedness or liability incurred hereunder by RRLP to the Lender prior to the date of receipt by the Lender of written notice of the effective date of such action or (b) the validity and enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Loan Documents. Notwithstanding any such reversal, stay, modification or vacatur, any post-petition indebtedness, obligation or liability incurred by RRLP to the Lender prior to written notice to the Lender of the effective date of such action shall be governed in all respects by the original provisions of this Order, and Lender shall be entitled to all the rights, remedies, privileges and benefits granted herein and in the DIP Loan Documents with respect to all such indebtedness,

obligation or liability.

22. No Waiver. This Order shall not be construed in any way as a waiver or relinquishment of any rights that the Lender may have to bring or be heard on any matter brought before this Court.

23. Conversion/Dismissal. No motion shall be filed by RRLP for, and RRLP shall not consent to any order dismissing or converting this Chapter 11 case under section 1112 of the Bankruptcy Code or appointing a chapter 11 trustee or an examiner with expanded powers, unless and until the DIP Obligations shall have been indefeasibly paid in full and completely satisfied. If an order dismissing this case under sections 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide that (x) the liens, security interests, and Superpriority Claims granted to the Lender hereunder and in the DIP Loan Documents, as the case may be, shall continue in full force and effect, shall remain binding on all parties-in-interest and shall maintain their priorities as provided in this Interim Order until all DIP Obligations shall have been indefeasibly paid in full and completely satisfied, and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the liens, security interests and Superpriority Claims of the Lender, as the case may be.

24. Injunction. Except as provided in the DIP Loan Agreement and this Order, RRLP shall be enjoined and prohibited from, at any time during the Chapter 11 Case, (a) granting liens in the Collateral or portion thereof to any other parties, pursuant to section 364(d) of the Bankruptcy Code or otherwise, which liens are senior to, on a parity with or junior to the liens of the Lender and/or (b) (i) using the Collateral, and (ii) applying to any Court for an order authorizing the use of the Collateral, except in accordance with the DIP Loan Agreement.

25. Survival. Unless and until the DIP Obligations have been indefeasibly paid in full, (a) the protections afforded to the Lender under this Order, and any actions taken pursuant thereto shall survive the entry of an order (i) confirming a plan of reorganization; (ii) dismissing

17

this case or (iii) converting this case into a case pursuant to chapter 7 of the Bankruptcy Code,

(b) the Post-Petition Liens in and to the Collateral and the Superpriority Claim shall continue in these proceedings, in any such successor case or after any such dismissal. The Post-Petition Liens and Superpriority Claim shall maintain their validity and priority as provided by this and not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of Indebtedness or any conversion of any of this Chapter 11 Case into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of this Chapter 11 Case, by any act or omission until the DIP Obligations have been indefeasibly paid in full.

26. Priority of Terms. To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Loan Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the DIP Loan Agreement or the DIP Loan Documents, the terms and provisions of this Order shall govern.

27. Adequate Notice. The notice given by the Debtors of the hearing on the Motion was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the local rules of this Court. Under the circumstances, no other or further notice of the request for the relief granted at the hearing on the Motion is required.

28. Waiver of Requirement to File Memorandum of Law. The Motion includes citations to the applicable authorities and does not raise any novel issues of law. Accordingly, the requirement contained in Rule 9013-1 (b) of the Local Bankruptcy Rules for the Southern District of New York that a separate memorandum of law be submitted, is hereby waived.

29. Entry of Order; Effect. This Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Fed. R. Bankr. P. 6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Order on the Court's docket

in this Chapter 11 Case.

Dated: New York, New York
April 20, 2007

      *s/ James M. Peck*
Honorable James M. Peck
United States Bankruptcy Judge