LeCLAIR RYAN, a Professional Corporation
Michael T. Conway, Esq.
830 Third Avenue, 5th Floor
New York, NY 10022
Telephone: (212) 430-8032
Facsimile: (212) 430-8062

Attorneys for Debtors Scarborough-St James Corporation
  and First Richborough Realty Corporation

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――――

| | |
|---|---|
| | Chapter 11 |
| In re: | |
| SCARBOROUGH-ST. JAMES CORPORATION, et al., | Case No. 03-17966 (JMP) |
| Debtors. | (Jointly Administered) |

―――――――――――――――――――――――――――――

**MOTION OF SCARBOROUGH-ST. JAMES CORPORATION FOR AN
ORDER (1) ENFORCING THE ADEQUATE PROTECTION DIRECTIVES
WITHIN THIS COURT'S APRIL 20, 2007 AMENDED ORDER AUTHORIZING
DEBTOR RICHMOND REALTY LIMITED PARTNERSHIP TO INCUR
POSTPETITION SECURED INDEBTEDNESS; AND (2) REQUIRING RRLP
<u>TO REIMBURSE THE ESTATES' EXPENSES IN BRINGING THIS MOTION</u>**

Scarborough-St James Corporation ("SSJC, as debtor and debtor in possession, by counsel,

hereby moves the Court for the entry of an order, pursuant to section 105 of title 11 of the United

States Code, enforcing the adequate protection provisions of this Court's April 20, 2007 Amended

Order by which it authorized Richmond Realty Limited Partnership ("RRLP") to obtain post petition

secured indebtedness (the "DIP Financing Order") and by which RRLP was required to pay

1

$450,000, as adequate protection to SSJC, and seeking payment of SSJC's expenses in bringing the Motion. In support of the Motion, SSJC states as follows:

## Jurisdiction and Venue

1. On December 17, 2003 (the "Petition Date"), SSJC and FRRC commenced their cases (the "SSJC/FRRC Bankruptcies") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. On November 22, 2006 (the "RRLP Petition Date"), RRLP filed with this Court its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3. The Debtors' estates are being jointly administered for procedural purposes only.

4. The Debtors continue to operate their business as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is Bankruptcy Code Section 105(a).

## The DIP Financing Order

6. On February 21, 2007 this Court heard a motion by which approval was sought on a proposed $3.1 million loan to RRLP (the "DIP Loan Motion") and, indeed, the DIP Loan Motion was granted by this Court as evidenced by an Order dated February 22, 2007 (later amended on April 20, 2007 at the request of RRLP to accommodate certain concerns of the Lender).

7. Pursuant to the DIP Financing Order, the Lender was granted a security interest and a superpriority claim secured, *inter alia*, by perfected priming liens on all of RRLP's assets and

priming all existing secured creditors, including the secured claims of Warren Bank, SSJC and MCANY of Richmond Fund II Limited Partnership ("MCANY II"). These secured claims, described more fully in Schedule 1 to the DIP Financing Order, included the following defined liens:

The "Warren Bank Lien" shall mean and refer to any and all liens or encumbrances on the Shopping Center in favor of Warren Bank, a Michigan banking corporation ("Warren Bank"), including, without limitation, that certain mortgage from Richmond Realty Limited Partnership, a Michigan limited partnership ("RRLP") to Warren Bank, filed of record August 6, 2004 in Liber 15738, page 667, in the original principal amount of $2,000,000.00, and the terms and conditions thereof, and that certain Assignment of Leases and Rents by RRLP to Warren Bank, dated as of July 16, 2004 and recorded in Liber 15738, page 683 on August 6, 2004.

The "Carmen Lien" shall mean and refer to any and all liens or encumbrances on the Shopping Center in favor of Carmen, L.L.C. ("Carmen"), including, without limitation, that certain Commercial Wrap Mortgage from RRLP to Carmen, filed of record August 6, 2004 in Liber 15738, page 689, in the original principal amount of $2,000,000.00, and the terms and conditions thereof.

The "MCANY II Lien" shall mean and refer to any and all liens or encumbrances on the Shopping Center in favor of MCANY of Richmond Fund II Limited Partnership, a New York limited partnership ("MCANY II"), including, without limitation, that certain mortgage from RRLP to First Richborough Realty Corporation, a Delaware corporation ("FRRC"), filed of record December 20, 1985 in Liber 3874, page 738, in the original principal amount of $8,140,000.00, and the terms and conditions thereof, which mortgage has been assigned to MCANY of Richmond Fund Limited Partnership, a Michigan limited partnership ("MCANY I") by Assignment recorded August 6, 2004 in Liber 15738, page 712 and further assigned to MCANY II by Assignment recorded August 6, 2004 in Liber 15738, page 833 which was amended and restated by Amended/Restated Wraparound Mortgage in the face amount of $9,022,835.00 executed by RRLP to MCANY II, dated July 27, 2004 and recorded August 6, 2004 in Liber 15738, page 857.

The "SSJC Lien" shall mean and refer to any and all liens or encumbrances on the Shopping Center in favor of Scarborough-St. James Corporation, a Delaware corporation ("SSJC") or  FRRC, including, without limitation, that certain $1,400,000.00 portion of the MCANY II Lien which was assigned to SSJC and FRRC by MCANY II as part of a certain settlement dated as of June 26, 2006 and approved by the Bankruptcy Court by Order dated August 9, 2006, which assignment

was recorded by way of a Memorandum of Assignment dated as of June 26, 2006 and filed on record September 27, 2006 in Liber 18186, page 759. The MCANY II lien was subordinated to the SSJC Lien by this same document such that the first $1,400,000 recovered under the MCANY II Lien, plus interest thereon from June 26, 2006, shall be paid to SSJC and/or FRRC prior to the payment of the balance of the MCANY II Lien to MCANY II.

8.    Also pursuant to the DIP Financing Order, an adequate protection regime was implemented, pursuant to section 364(d)(1)(B) of the Bankruptcy Code, to protect the interests of the holders of the above-described liens on the property of the estate on which the Priming Liens were granted. This adequate protection regime, which is described more fully in paragraph 7 of the DIP Financing Order, includes the following protections:

(a)    Property Taxes. RRLP is directed to place a portion of the DIP financing proceeds, $85,000.00, into an escrow account controlled by its counsel for the purpose of paying any unpaid real property taxes which were due as of the RRLP Petition Date (the "Unpaid Taxes"). The Macomb County Michigan Treasurer's Office and the Office of the City Treasurer for the City of Richmond, Michigan are hereby granted a replacement lien on such account in an amount sufficient to cover the Unpaid Taxes. Once the Unpaid Taxes are paid, any remaining amounts in this account shall be returned to RRLP for the purpose of paying administrative and general operating expenses in these bankruptcy cases. RRLP shall settle an order relating to the payment of the property taxes.

(b)    Warren Bank Lien/Carmen Lien. RRLP is directed to place a portion of the DIP financing proceeds, $2,348,269.20, into an escrow account controlled by its counsel for the purpose of paying the Warren Bank Lien (the "Loan Repayment"). Any payment to Warren Bank by RRLP shall have the effect of reducing, on a dollar for dollar basis, any liability owed by RRLP under both the Warren Bank Lien and the Carmen Lien subject to a right of Carmen to review and object to the ultimate payment by RRLP to Warren Bank and, upon full payment of the Warren Bank Lien, all security documents executed by RRLP in favor of either Warren Bank or Carmen in connection with the Warren Bank Liens shall be cancelled and deemed null and void, except for the Carmen Mortgage, defined as that certain Commercial Wrap Mortgage from RRLP to Carmen, filed of record August 6, 2004 in Liber 15738, page 689, in the original principal amount of $2,000,000.00, which Carmen Mortgage is subordinated by this Order to the Post-Petition Liens and Superpriority Claims granted to the Lender, and which Carmen Mortgage shall continue to secure any and all additional amounts determined to be due to Carmen under the Carmen Lien as shall be set forth in a further Order of this Court after conclusion of any

claims allowance process. Moreover, if at some future date Carmen shall determine that changed circumstances have left it not adequately protected, it may make an appropriate motion addressing this issue. Warren Bank is hereby granted a replacement lien on this account and, immediately upon the funding of this account, any security interest of Warren Bank or Carmen in the leases, rents or profits from the Shopping Center shall cease and such rents and profits shall thereafter be paid pursuant to the Intermediate Lease and Servicing Agreement, as set forth in this Court's August 9, 2006 Order approving that certain June 26, 2006 Stipulation Resolving Claims, except with respect to the rents paid by Kmart, which shall be paid in accordance with the DIP Loan Agreement. RRLP shall settle an order relating to the payment of the Loan Repayment.

(c)     SSJC Lien. RRLP is directed to pay, upon the closing of the DIP Loan, a portion of the DIP financing proceeds, $450,000.00, to SSJC as partial satisfaction of the SSJC Lien. This payment shall not alter the continued effect of the SSJC Lien on the Shopping Center, as primed, by the Lender's Superpriority liens granted herein.

9.      As discussed in the DIP Financing Motion, "Based on this [$450,000] payment, and based on the continued effect of the SSJC Lien on the Shopping Center as primed, SSJC consents to the proposed priming lien." (*See* Motion, p. 20).

10.     Without SSJC's consent, it is unlikely that RRLP could have obtained the DIP Financing Order. Indeed, among other reasons, SSJC was previously given complete control and authority with respect to any financing or refinancing decisions to be made by RRLP.

11.     Specifically, on or about June 26, 2006, RRLP, SSJC, First Richborough Realty Corporation ("FRRC"), MCANY of Richmond Fund II Limited Partnership ("MCANY II") and certain other parties settled their disputes under the SSJC/FRRC Bankruptcies, pursuant to a Stipulation Resolving Claims (the "Stipulation") and, on August 9, 2006, this Court approved the Stipulation.

12.     One of the outcomes of the Stipulation was MCANY II and RRLP each gave SSJC a power of attorney to enter into financing arrangements, such as the one contemplated by this motion,

on their behalf, and RRLP agreed that it could not, on its own, any such financing arrangements without the approval of SSJC.

13.     Specifically, paragraph 5 of the Stipulation included the following language:

    (d)     … The RRLP parties further agree that [SSJC's $1.4 million] may be prepaid through a refinancing at the discretion of [SSJC], that RRLP shall provide all documents or manner of assistance required to obtain and carry out such refinancing including without limitation executing any documents reasonably required by the party providing the funds for such refinance, and that the funds from such a refinance shall be payable solely and directly to [SSJC].
    …
    (g)     The RRLP parties hereby agree that, other than as set forth herein, RRLP will not refinance or otherwise further encumber their interests in the Shopping Center without the consent of [SSJC] …[1]

14.     As set forth in the accompanying April 30, 2007 Declaration of Michael T. Conway filed in support of the Motion, the funding of the DIP Loan finally occurred on April 25, 2007, however, counsel to RRLP has refused to transfer $450,000 from the DIP Loan proceeds to SSJC as required by the DIP Financing Order.  (Conway Declaration, ¶ 11).

15.     In fact, counsel for RRLP has indicated that it was not happy with the idea of including this payment in the adequate protection regime requested in the DIP Financing Motion and intends to make the argument to this Court that allowing this to be included in the DIP Financing Motion was "a mistake" and should now be corrected.    (Conway Declaration, ¶ 12).

16.     To the contrary, while counsel for RRLP and its principal, Thomas L. Armano, Jr., did argue for some time with SSJC's counsel in a lengthy telephone conversation which took place on January 26, 2007, that they did not want this payment to be made (or made in this amount), they ultimately conceded to the payment provision based on SSJC's counsel's position that it SSJC would

---

[1] A copy of the full text of the Stipulation, without exhibits, is annexed hereto as Exhibit "A."

not support the DIP Loan Motion unless the $450,000 payment was made. (Conway Declaration, ¶ 16).

17.     At no time during the extensive briefing on the subject of the DIP Loan, or in the negotiations with parties such as Warren Bank and Carmen LLC for modifications to the Proposed DIP Financing Order, did RRLP ever renew its objection to the $450,000 payment to SSJC. (Conway Declaration, ¶ 17).

18.     Based on the agreement to make this payment immediately upon the funding of the DIP Loan, SSJC supported RRLP throughout the DIP Financing Motion process and even spent countless hours assisting RRLP in the negotiation of the various loan documents required by the Lender subsequent to the hearing on the DIP Financing Motion. (Conway Declaration, ¶ 18).

19.     Counsel for RRLP has indicated that it wants to use this $450,000 for the purpose of administering the RRLP bankruptcy estate. (Conway Declaration, ¶ 19). SSJC has objected to this use of what it considers SSJC estate property, but has suggested to counsel for RRLP that it would not object to RRLP's obtaining an additional, but reasonable, loan amount for this purpose. (Conway Declaration, ¶ 19).

## Relief Requested

20.     By this Motion, the Debtors request that this Court (i) enter the proposed order (the "Order") attached hereto as Exhibit "B" requiring RRLP to: (a) immediately transfer $450,000 to SSJC; and (b) pay a sum to SSJC to be determined by submission of a stipulation between RRLP and SSJC or, if necessary, after submission of a Declaration from counsel to SSJC detailing the fees and expenses incurred in bringing the Motion.

## Legal Authority

### A.    Approval under Section 364(c)

21.    Section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105(a) also gives a bankruptcy court the power to enforce its valid rulings and orders. *See* 11 U.S.C. § 105(a); *In re Johns-Manville Corp.,* 2004 WL 1876046, at \*27 (Bankr. S.D.N.Y. Aug. 17, 2004); *In re Stockbridge Funding Corp.,* 145 B.R. 797, 804 (Bankr.S.D.N.Y. 1992).

22.    As demonstrated by the DIP Financing Order at paragraph 7, this Court approved the joint request by SSJC and RRLP that the adequate protection provided to SSJC in exchange for its consent to the DIP Financing Order – an immediate payment of $450,000 from the DIP Loan proceeds.

23.    RRLP's current position, that it should not be required to comply with this Court's orders where it feels these orders are "inconvenient," is frivolous and sanctionable and SSJC's request for fees and costs is, under the circumstances, reasonable and warranted.

24.    The relief SSJC seeks is necessary and appropriate since the payment contemplated under the DIP Financing Order will allow SSJC to finally exit bankruptcy – it will allow SSJC to bring a final resolution to each of the outstanding claims against the Estate, as well as satisfying all of the administrative payment obligations of SSJC. This position taken by RRLP is preventing distributions to SSJC and FRRC's creditors and, frankly wasting their Estates' limited monetary resources.

## Waiver Of Memorandum Of Law

25.     Because this Motion does not present any novel issues of law and the case law, statutory provisions and rules upon which SSJC relies are set forth herein, SSJC requests that the Court waive and dispense with the requirement set forth in Local Bankruptcy Rule 9013-1(b) that a separate memorandum of law be filed in support of this Motion. SSJC reserves the right, however, to submit a reply memorandum of law in the event objections to the Motion are filed.

## No Prior Request

26.     No prior request for the relief sought herein has been made to this or any other Court.

## Notice

27.     No trustee, examiner, or official creditors' committee has been appointed in the Debtors' cases. Notice of this motion will be given, in the form proposed in Exhibit "C" hereto, to: (i) the Office of the United States Trustee for the Southern District of New York; and (ii) counsel to RRLP. SSJC submits that no other or further notice is necessary.

**WHEREFORE,** SSJC requests entry of an Order, substantially in the form submitted herewith as Exhibit "B," and granting such other and further relief as the Court may deem proper.

Dated: April 30, 2007
      New York, New York

LeCLAIR RYAN, a Professional Corporation


By: /s/ Michael T. Conway
Michael T. Conway (MC2224)

830 Third Avenue, 5th Floor
New York, NY 10022
Telephone: (212) 430-8032
Facsimile:  (212) 430-8062

Attorneys for Scarborough-St James Corporation
  and First Richborough Realty Corporation

**Exhibit A**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------------x

In re:                                                          :   Chapter 11

SCARBOROUGH-ST. JAMES CORPORATION, *et al.*,    :   Case No. 03-17966 (JMP)

                          Debtors.                              :   (Jointly Administered)

-------------------------------------------------------------------------------x

## STIPULATION RESOLVING CLAIMS

Scarborough-St. James Corporation ("SSJC") and First Richborough Realty Corporation ("FRRC"), the above-captioned debtors (the "Debtors"), together with Nancy P. Armano, Richmond Realty Limited Partnership ("RRLP"), Thomas L. Armano, Jr. ("Armano"), Debra Karas-Darland ("Karas," collectively with RRLP and Armano, the "RRLP Parties"), Jacobson-Stewart Richmond Properties Partnership ("JS"), Joseph Jacobson ("J.Jacobson"), Nancy Jacobson ("N.Jacobson," collectively with JS and J.Jacobson, the "JS Parties"), MCANY of Richmond Realty Fund II Limited Partnership ("MCANY") and Benedict Silverman ("Silverman," collectively with MCANY, the "MCANY Parties"), Stephen S. Cohen ("Cohen"), Larry Dries ("Dries") and Euro American Realty Investors Ltd. ("EA," collectively with Cohen and Dries, the "EA Parties"), by and through their authorized representatives, stipulate and agree as follows:

## RECITALS

WHEREAS, to date, the Debtors' only venture has been the acquisition of an approximately 158,900 square foot commercial real estate development constructed on approximately 19.81 acres of land in Richmond, Michigan (the "Shopping Center") more specifically described as set forth in Schedule "1," hereto; and

WHEREAS, upon the acquisition of the Shopping Center, the Debtors entered into a series of agreements with RRLP whereby RRLP (i) purchased legal title to the Shopping Center in exchange for a certain August 1, 1985 Wraparound Mortgage (the "Wrap Mortgage") and related August 1, 1985 Wraparound Note (the "Wrap Note") and (ii) entered into a certain August 1, 1985 Intermediate Net Lease (the "Intermediate Lease") with FRRC; and

WHEREAS, the Debtors transferred their interests in the Wrap Mortgage, Wrap Note and Intermediate Lease to MCANY in 1985;

WHEREAS, on or about July 27, 2004, the Wrap Mortgage and Wrap Note were amended by RRLP and MCANY and said amendments and restatements were thereafter recorded. True and correct copies of the Wrap Mortgage and Wrap Note, as amended as of July 27, 2004, and as further amended pursuant to this Stipulation, are annexed hereto as Exhibit "A"; and

WHEREAS, in connection with this Stipulation, the RRLP Parties and the MCANY Parties acknowledge that the Intermediate Lease was mistakenly transferred away from MCANY based on an assumption, which was incorrect, that there had been a default on the part of MCANY under the Intermediate Lease, and that said transfer, which occurred in or around November 2003, being not only a mistake, but also being a preferential transfer insofar as it affected the assets of the Debtors, is deemed void *ab initio*;

WHEREAS, the Intermediate Lease, which shall be treated as having never been transferred away from MCANY, shall be amended by an Amended and Restated Intermediate Lease in the form annexed hereto as Exhibit "B"; and

WHEREAS, a certain Servicing Agreement was entered into by MCANY and FRRC on December 31, 1985 whereby FRRC was designated by MCANY to, *inter alia*, collect rents paid

by subtenants at the Shopping Center, collect payments made pursuant to the Wrap Note and make payments pursuant to the Intermediate Lease. In connection with this Stipulation, MCANY shall execute an Amended and Restated Servicing Agreement in the form annexed hereto as Exhibit "C"; and

WHEREAS, on December 17, 2003 the Debtors commenced bankruptcy cases under chapter 11 of title 11 of the United States Code; and

WHEREAS, on or about August 30, 2004, RRLP received a $2,000,000 loan, secured by the Shopping Center ("Carmen Mortgage"), from Carmen LLC ("Carmen") and entered into various other agreements (the "Carmen Agreements") with the principals and, or affiliates of Carmen, Peter Beer ("Beer"), Robert Eisenhardt ("Eisenhardt") and Benedetto Sorrentino ("Sorrentino," collectively with Carmen, Beer and Eisenhardt, the "Carmen Parties") including without limitation a certain Assignment of Leases and Rents to Warren Bank, a Michigan banking corporation, recorded in Liber 15738, page 683; and

WHEREAS, the Carmen Parties allege that, pursuant to the Carmen Agreements and Carmen Mortgage, the Carmen Parties or an affiliate of the Carmen Parties is currently acting as the manager and leasing agent of the Shopping Center; and

WHEREAS, in or around February 2006, the Carmen Parties or an affiliate of the Carmen Parties appropriated the rents and Common Area Maintenance contributions payable by the retail tenants of the Shopping Center; and

WHEREAS, by information and belief, since appropriating the rents and Common Area Maintenance contributions payable by the retail tenants of the Shopping Center, the Carmen Parties or an affiliate of the Carmen Parties have failed, *inter alia*, to use any of said rents and Common Area Maintenance contributions towards the payment of real estate taxes due on the

Shopping Center and have failed to make critical repairs to the roof of the Shopping Center, despite the complaints of certain retail tenants of the Shopping Center; and

WHEREAS, since appropriating the rents and Common Area Maintenance contributions payable by the retail tenants of the Shopping Center, the Carmen Parties or an affiliate of the Carmen Parties have refused to provide the owner of the Shopping Center, RRLP, MCANY and the Debtors with an accounting of their use of said rents and Common Area Maintenance contributions and to consult with RRLP, MCANY and the Debtors as to how said rents and Common Area Maintenance contributions should be used; and

WHEREAS, the actions or lack thereof of the Carmen Parties or an affiliate of the Carmen Parties have placed the various interests of RRLP, MCANY and the Debtors in the Shopping Center at substantial and immediate risk; and

WHEREAS, in connection with the bankruptcy cases filed by the Debtors, the Debtors advised the RRLP Parties and the MCANY Parties in December 2005 that they intended to bring certain claims against the RRLP Parties and the MCANY Parties in the Bankruptcy Court in connection with, *inter alia*, the attempted transfer of the Intermediate Lease and the Servicing Agreement away from the Debtors whereupon the Debtors, the RRLP Parties and the MCANY Parties entered into negotiations to resolve all issues between them; and

WHEREAS, on December 19, 2005, the Debtors executed tolling agreements with the RRLP Parties, certain of the EA Parties and the MCANY Parties effectively tolling the period in which certain claims or causes of action which might have been asserted by the Debtors against such parties could be asserted (the "Tolling Agreements"); and

WHEREAS, on December 19, 2005, the Debtors filed their "Complaint to Avoid and Recover Transfers of Property Pursuant to 11 U.S.C. §§ 544, 547, 548 and 550" as Adversary

Proceeding Number 05-03390 (JMP) (the "Avoidance Adversary"), naming RRLP, JS, MCANY, John M. Beeding, Jr. ("Beeding") and The Beeding Legal Group, P.C. ("BLG") as defendants; and

WHEREAS, FRRC, JS, RRLP and Nancy P. Armano ("Nancy Armano") are parties to a related matter pending in the Macomb County (Michigan) Circuit Court entitled: Jacobson-Stewart Richmond Properties Management, et al. v. First Richborough Realty Corporation, et al., Case Number 02-3139-CH, and the related appeal pending before the State of Michigan Court of Appeals entitled: Jacobson-Stewart Richmond Properties Management, et al. v. First Richborough Realty Corporation, et al., Court of Appeals Number 262753 (collectively, the "Michigan Actions"); and

WHEREAS, on October 19, 2005, the Debtors filed a separate complaint against Beeding and BLG alleging claims of professional negligence, fraud and violation of New York Judiciary Law 487 as Adversary Proceeding Number 05-3059 (JMP) (the "Malpractice Adversary"); and

WHEREAS, on March 1, 2006, the Court granted in part and denied in part a motion to dismiss the Malpractice Adversary (the "Motion to Dismiss") and allowed for the filing of an amended complaint in that matter to be served on or before March 24, 2006, which date was modified and extended based on the efforts of the parties to resolve the claims at issue such that an amended complaint would now be due on or before a date to be determined by the Court at a subsequent appearance; and

WHEREAS, at the March 1, 2006 hearing on the Motion to Dismiss, the Court indicated that, assuming an amended complaint was filed in the Malpractice Adversary, said action would be combined with the Avoidance Adversary for all purposes going forward; and

WHEREAS, on November 16, 2005, FFRC filed its "Complaint for Turnover of Property of the Estate Pursuant to 11 U.S.C. § 542(a)" as Adversary Proceeding Number 05-03160 (JMP) (the "Turnover Adversary"), naming U.S. Bank, N.A. ("US Bank"), JS and RRLP as defendants; and

WHEREAS, on March 22, 2006, a Stipulation was entered into by the parties to the Turnover Adversary calling for the deposit of certain funds by US Bank in the Court Registry (the "US Bank Funds") and for the dismissal of all claims against US Bank, except any claims which might remain with respect to certain fees retained by US Bank in connection with its administration of the accounts from which the US Bank Funds were derived (the "US Bank Fees"); and

WHEREAS, the undersigned parties have, pursuant to the direction of the Court, met and conferred concerning the possibility of settlement of the various claims asserted in the Avoidance Adversary, the Michigan Action, the Malpractice Adversary and the Turnover Adversary; and

WHEREAS, Beeding and BLG have not agreed to any basis on which they might settle the claims asserted against them; and

WHEREAS, the undersigned parties, consisting of the Debtors, the RRLP Parties, the MCANY Parties, the EA Parties, the JS Parties and Nancy Armano, believe it is in their best interests to settle and dispose of, fully and completely, all claims between them arising out of, connected with, or incidental to the Avoidance Adversary, the Michigan Actions, the Turnover Adversary and the claims tolled by the Tolling Agreements, as provided herein on the terms forth set below.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED AS FOLLOWS:

1.     Condition Precedent.  As a condition precedent to the effectiveness of the terms and conditions of this Stipulation, including without limitation, the releases contemplated herein, it is understood and agreed that each and every term and condition of this Stipulation must first be approved by a Final Order of the Bankruptcy Court.  The Debtors shall file a motion seeking Bankruptcy Court approval of this Stipulation within five days of receiving executed copies from each of the Parties hereto.  For the purpose of this Stipulation, a "Final Order" means an order of the Bankruptcy Court approving this Stipulation and authorizing the Debtors to take all actions necessary and/or desirable to implement and carry out the rights, agreements and obligations described herein as to which (i) the time for appeal has expired and no appeal has been timely taken; or (ii) any timely appeal has been finally determined or dismissed; or (iii) an appeal has been timely taken but such order has not been stayed within ten (10) days after the filing of such appeal.  Absent a Final Order, the Parties agree that this Stipulation shall not be admissible as evidence in any future proceedings.

2.     Consideration from the JS Parties:

(a)     Within 5 days of entry of the Final Order, JS shall pay to the Debtors, by certified check made payable to "Lazare Potter Giacovas & Kranjac LLP, as attorneys" in the amount of $70,000 (the "JS Payment").

(b)     The JS Parties hereby relinquish any claim or interest in any portion of the US Bank Funds and agree that the US Bank Funds are now the property of the Debtors' estates.

(c)     The JS Parties hereby assign to the Debtors any claim, right or interest they have had or might now have relating to the US Bank Fees, including without limitation, any contingent interest relating to real or potential legal action against US Bank in any way relating to or concerning the US Bank Funds or US Bank Fees.  The most recent account statements and

7

fee reports provided by US Bank relating to the US Bank Funds or US Bank Fees are collectively attached hereto as Exhibit "D." Although the intention of the parties is that this paragraph constitute a legally binding and complete assignment of any claim or interest of the JS Parties which relates to or concerns the US Bank Funds or US Bank Fees to the Debtors, the JS Parties nonetheless agree to provide a separate writing confirming and evidencing this assignment, as well as declarations or other similar instruments as reasonably deemed necessary by the Debtors and/or any successor by merger, transfer, election or otherwise, their agents or assigns (singularly and collectively referred to herein at times as the "Reorganized Debtors") to support such claims or interests, upon request for the same by the Reorganized Debtors or their assigns. The JS Parties shall be entitled to participate in the drafting of any such instruments, however, it is agreed that time is of the essence with respect to the drafting of any such instruments.

(d)     Upon execution of this Stipulation, JS shall cause its counsel to execute two original stipulations of discontinuance of the Michigan Actions (the "Michigan Stipulations") collectively annexed hereto as Exhibit "E," which Michigan Stipulations shall be held in attorney escrow by counsel for the Debtors pending a Final Order. Within five days after entry of a Final Order, the Michigan Stipulations shall be released from attorney escrow by counsel for the Debtors, one to counsel for the JS Parties and one to counsel to the other interested defendant in the Michigan Actions, Nancy Armano. It shall be the right and responsibility of the JS Parties or Nancy Armano to file the Stipulations in the appropriate Michigan court.

(e)     The JS Parties make no representation or agreement as to the accuracy of the recitals to this Stipulation and Debtors acknowledge that counsel to the JS Parties did not

represent any of the Carmen Parties in connection with any of the activities described in this Stipulation.

2.1     Consideration from Nancy Armano:

(a)     Upon execution of this Stipulation, Nancy Armano execute, or cause shall cause her counsel to execute, two originals of the Michigan Stipulations collectively annexed hereto as Exhibit "E," in her individual capacity and as President of FRRC, which Michigan Stipulations shall be held in attorney escrow by counsel for the Debtors pending a Final Order. Within five days after the entry of a Final Order, the Michigan Stipulations shall be released from attorney escrow by counsel for the Debtors, one to counsel for the Nancy Armano and one to counsel to the other interested defendant in the Michigan Actions, the JS Parties. It shall be the right and responsibility of the JS Parties or Nancy Armano to file the Stipulations in the appropriate Michigan court.

3.     Consideration from the MCANY Parties:

(a)     Simultaneously with the execution of this Stipulation, MCANY shall execute and deliver to counsel for the Debtors the amendments to the Wrap Note and Wrap Mortgage in the form annexed hereto as Exhibit "A," as well as the Amended and Restated Intermediate Lease.

(b)     The MCANY Parties hereby (i) assign $1,400,000 of the Wrap Note to the Debtors (the "Assigned Portion"); (ii) agree that the remaining principal and interest due from RRLP under the Wrap Note, as amended, is hereby subordinated to the right of the Reorganized Debtors to collect the principal and interest due from RRLP under the Assigned Portion; and (iii) agree that the Wrap Mortgage is hereby assigned to the Debtors, to the extent necessary, for the purpose of enforcing the rights which inure to the Reorganized Debtors in connection with the

Assigned Portion. Although the intention of the parties is that this paragraph constitute a legally binding and complete assignment of the Assigned Portion by the MCANY Parties to the Debtors, the MCANY parties nonetheless agree to provide a separate writing confirming and evidencing this assignment, as well as declarations or other similar instruments as deemed necessary by the Reorganized Debtors to support such claims or interests, upon request for the same by the Reorganized Debtors.

(c)     Simultaneously with the execution of this Stipulation, MCANY shall execute the Amended and Restated Servicing Agreement annexed hereto as Exhibit "C" whereby it agrees, *inter alia*, that the Reorganized Debtors shall serve as collection agent for MCANY with respect to the Amended and Restated Intermediate Lease and the Wrap Note, including the Assigned Portion, with the sole power to make any payments due under the Wrap Note, including the Assigned Portion.

(d)     MCANY hereby pledges the Amended and Restated Intermediate Lease, the Wrap Note and the Wrap Mortgage to the Reorganized Debtors as security in the performance of the obligations created in this Stipulation and in the Amended and Restated Servicing Agreement and grants a security interest to the Reorganized Debtors in, for so long as the Amended and Restated Servicing Agreement annexed hereto as Exhibit "C," including any amendments thereto, remains in existence, all of MCANY's right, title and interest in any leases at the Shopping Center, including the Kmart lease, all rents, all rights to collect rents, all income and profits of the Shopping Center, all rights to collect income and profits at the Shopping Center and all future leases, rents, income and profits pertaining thereto, as well as the right to enforce any such present or future lease or leases at the Shopping Center. MCANY further consents to the filing of any document necessary to perfect the security interest granted by this

paragraph.  MCANY further hereby grants a power of attorney to the Reorganized Debtors which is intended to allow the Reorganized Debtors, if necessary, to enforce the rights set forth in the Amended and Restated Intermediate Lease and the Wrap Note or Wrap Mortgage or to attach the Amended and Restated Intermediate Lease, the Wrap Note and/or the Wrap Mortgage in the event of a default by MCANY in its obligations created in this Stipulation or in the Amended and Restated Servicing Agreement.   Specifically, MCANY hereby irrevocably constitutes, appoints and empowers the Reorganized Debtors and each of the Debtors' authorized officers and attorneys-in-fact, with full power of substitution, as the true and lawful agent and attorney-in-fact, with full power and authority in its name, place and stead to make, execute, verify, consent to, swear to, acknowledge, make oath as to, publish, deliver, file and/or record in the appropriate public offices (i) all certificates and other instruments including, at the option of the Reorganized Debtors, this Stipulation, that the Reorganized Debtors deem appropriate or necessary to enforce the foregoing rights; or (ii) any and all documents necessary to effectuate a refinance of the Assigned Portion or the Encumbrances (as hereinafter defined).

(e)      MCANY has read and consents to the language of Section 5(e), below insofar as it relates to MCANY.

(f)      The MCANY parties hereby agree that the Wrap Note does not need to be satisfied upon an execution of the Option described in Section 5(j), below.

(g)      The MCANY parties hereby assign any rights, claims or actions they have or may have against any person or entity relating to or concerning the Wrap Note, Wrap Mortgage or Intermediate Net Lease to the Reorganized Debtors.  Although the intention of the parties is that this paragraph constitute a legally binding assignment given by the MCANY Parties to the Reorganized Debtors, the MCANY parties nonetheless agree to provide a separate

writing confirming and evidencing this assignment, as well as declarations or other similar instruments as deemed necessary by the Reorganized Debtors to support the assignment or claims assigned, upon request for the same by the Reorganized Debtors.

4.      <u>Consideration from the EA Parties</u>:

The EA Parties represent, warrant and agree that any and all options, interests or rights given to them to purchase the Shopping Center by RRLP at anytime are hereby voided, relinquished, set aside and held for naught. The EA Parties further represent and warrant that they have not assigned, transferred, encumbered or otherwise alienated their rights with respect to the EA Option. Although it is the intention of the parties that this paragraph constitute a legally binding and complete relinquishment of any and all rights they may have, in any form and in any manner, to acquire any interest whatsoever in the Shopping Center, the EA parties nonetheless agree to provide a separate writing confirming and evidencing this relinquishment, upon request for the same by the Reorganized Debtors.

5.      <u>Consideration from the RRLP Parties</u>:

(a)      Simultaneously with the execution of this Stipulation, RRLP shall execute and deliver to counsel for the Debtors the amendments to the Wrap Note and Wrap Mortgage in the form annexed hereto as Exhibit "A," as well as the Amended and Restated Intermediate Lease. In connection with the Amended and Restated Intermediate Lease, RRLP assigns to MCANY all of its rights, title and interest in any existing leases, rents, common area maintenance reimbursements, etc. relating to the Shopping Center, as more fully set forth by the terms of the Amended and Restated Intermediate Lease, and all security deposits, books and records relating to the Shopping Center shall be delivered to counsel for the Debtors, within 30

days of a Final Order, to be held in attorney escrow pending further instruction from MCANY or its authorized agent.

(b)     The RRLP Parties hereby relinquish any claim or interest in any portion of the US Bank Funds and agree that the US Bank Funds are the property of the Debtors' estates.

(c)     Simultaneously with the execution of this Stipulation, RRLP shall cause its appropriate counsel to execute two original stipulations versions of the Michigan Stipulations collectively annexed hereto as Exhibit "E," which Michigan Stipulations shall be held in attorney escrow by counsel for the Debtors pending a Final Order.  Within five days after the entry of a Final Order, the Michigan Stipulations shall be released from attorney escrow by counsel for the Debtors, one to counsel for the JS Parties and one to counsel to the other interested defendant in the Michigan Actions, Nancy Armano.  It shall be the right and responsibility of the JS Parties or Nancy Armano to file the Stipulations in the appropriate Michigan court.

(d)     The RRLP parties hereby acknowledge and consent to the assignment of the Assigned Portion by MCANY to the Debtors.  In addition, the RRLP Parties hereby confirm the validity of, and their consent to, the amendments and restatements made contemporaneously herewith to the Wrap Mortgage and Wrap Note as set forth in Exhibit "A," and consent that the assignment of the Assigned Portion shall apply to the Wrap Note and Wrap Mortgage as so amended.  The RRLP parties further agree that the Assigned Portion may be prepaid through a refinancing at the discretion of the Reorganized Debtors, that RRLP shall provide all documents or manner of assistance required to obtain and carry out such refinancing including without limitation executing any documents reasonably required by the party providing the funds for such refinance, and that the funds from such a refinance shall be payable solely and directly to the Reorganized Debtors.  Although the intention of the parties is that this paragraph constitute a

legally binding consent given by the RRLP Parties to the Debtors, the RRLP parties nonetheless agree to provide a separate writing confirming and evidencing this consent, as well as declarations or other similar instruments as deemed necessary by the Reorganized Debtors to support such claims or interests, upon request for the same by the Reorganized Debtors.

(e)     RRLP hereby represents and warrants that it is unaware of any encumbrances or exceptions to clear title to the Shopping Center other than as described in the title insurance commitment annexed hereto as Exhibit "F."  RRLP hereby further agrees to use its best efforts to obtain financing available to purchase or otherwise extinguish the exceptions to title of the Shopping Center related to the Warren Bank and Carmen Mortgages or other security interest(s) (collectively, the "Encumbrances"), and to allow the Reorganized Debtors to obtain financing available to purchase or otherwise extinguish all or a portion the exceptions to title of the Shopping Center identified in Exhibit "F" which the Reorganized Debtors deem to be in the best interest of the Shopping Center to refinance or retire.  Notwithstanding the foregoing, nothing herein shall be interpreted to imply that the Debtors or RRLP has guaranteed that financing can be obtained by it or by the Reorganized Debtors or that they have an obligation or duty to obtain such financing.  Such a refinancing of the debt evidenced by one or more of the Encumbrances may be refinanced by the Reorganized Debtors without objection from RRLP so long as the terms of such refinancing do not require RRLP to pay a rate of interest higher than 14% and such refinancing allows for a right to prepay without penalty after a period not to exceed two years.  RRLP further grants the Reorganized Debtors the right to refinance the Assigned Portion. Any refinancing of the Assigned Portion shall be deemed reasonable and may be accomplished without objection from RRLP if the debt service payments due from RRLP towards said refinanced portion are not greater than those which exist under the terms of the

Wrap Note.  RRLP further grants to the Debtors, their successors, agents or assigns, the right to obtain financing, utilizing the Shopping Center as security, as deemed reasonably necessary in the sole discretion of the Reorganized Debtors, for the sole purpose of repairing, maintaining, expanding, modernizing or rehabilitating the Shopping Center and MCANY hereby grants a subordination of its rights under the Wrap Note and the Wrap Mortgage to any debt incurred pursuant to such financing or refinancing and hereby agrees to a collateral assignment of its rights under the Amended and Restated Intermediate Lease if necessary to secure the same or with respect to any other financing or refinancing described in this paragraph 5(e).  Upon request by the Reorganized Debtors, RRLP shall provide all documents or manner of assistance required to obtain and carry out such purchase or extinguishment of the exceptions to title described in Exhibit "F" immediately upon receipt of such request.  Time is of the essence in connection with the obligations set forth in this paragraph.  Furthermore, RRLP and MCANY hereby irrevocably constitute, appoint and empower the Reorganized Debtors and each of the Reorganized Debtors' authorized officers and attorneys-in-fact, with full power of substitution, as the true and lawful agent and attorney-in-fact, with full power and authority in its name, place and stead to make, execute, verify, consent to, swear to, acknowledge, make oath as to, publish, deliver, file and/or record in the appropriate public offices (i) all certificates and other instruments including, at the option of the Reorganized Debtors, this Stipulation, that the Reorganized Debtors deem appropriate or necessary to enforce the foregoing rights; or (ii) any and all documents necessary to effectuate a financing or refinancing as described in this paragraph 5(e).

(f)     Notwithstanding the condition precedent to effectiveness of this Stipulation stated in Paragraph 1, above, between the execution of this Stipulation and the date on which is approved by the Bankruptcy Court, RRLP shall use any funds which are not

otherwise necessary to service the debt secured by the Encumbrances, and shall instruct any manager, accountant or other third-party in possession of such funds, to immediately pay any outstanding real property taxes owed on account of the Shopping Center to the County of Macomb, State of Michigan. In the event that such funds are not available, RRLP agrees that the financing obtained to purchase or otherwise extinguish one or more of the Encumbrances may be increased to an amount required to satisfy such outstanding tax liability of the Shopping Center.

(g)     The RRLP parties hereby agree that, other than as set forth herein, RRLP will not refinance or otherwise further encumber their interests in the Shopping Center without the consent of the Reorganized Debtors and RRLP hereby grants an irrevocable right of first refusal, in favor of the Debtors to purchase RRLP's interest in the Shopping Center on terms identical to or otherwise equally as favorable to RRLP as those stated in any offer to purchase RRLP's interest in the Shopping Center, except that the Reorganized Debtors shall have 90 days in which to secure financing of such purchase (the "Right of First Refusal"). In the event the Reorganized Debtors do not exercise the Right of First Refusal and a sale of RRLP's interest in the Shopping Center is for a price actually paid for the Shopping Center and including consideration with a value which exceeds $1,772,500.00, any and all of said consideration which exceeds the first $1,772,500.00 in value paid for the Shopping Center shall be delivered first to the Reorganized Debtors as payment toward the Assigned Portion until the Assigned Portion is paid in full, and then to MCANY toward payment of the Wrap Note. If consideration includes both cash and non-cash consideration, the non-cash consideration shall be applied first to any portion of the purchase price which is less than $1,772,500.00 and payments made toward the Assigned Portion and the Wrap Note shall, to the extent possible, be made by payment of said cash portion. Any non-cash consideration shall be given its fair market value as determined by an

individual or individuals accredited in business evaluation. Any such sale of RRLP's interest in the Shopping Center would be subject to the Amended and Restated Intermediate Lease. Notwithstanding the foregoing, the Reorganized Debtors may not withhold consent to RRLP's refinancing any existing debt which is senior to the debt secured by the Wrap Mortgage or any new debt placed on the Shopping Center by the Reorganized Debtors if, in the event that within 90 days of such existing or new debt coming due, the Reorganized Debtors have not arranged for said debt to be repaid or refinanced, but only so long as such debt is repaid or refinanced on terms and conditions identical to or more favorable to the borrower than the existing terms and conditions of such debt and all aspects of such refinancing are conveyed in advance to the Reorganized Debtors and all documents relating to such refinancing are provided to the Reorganized Debtors sufficiently in advance of being finalized that the Reorganized Debtors can confirm they are consistent with this paragraph (g).

(h)     RRLP hereby acknowledges, agrees, warrants and confirms that the Reorganized Debtors have an interest in the Shopping Center which is adversely affected by the exceptions to title set forth in Exhibit "F" and that it shall not challenge, interfere with or object to any action by the Reorganized Debtors by which an exception to title is objected to or challenged. The RRLP parties agree to provide, if deemed necessary by the Reorganized Debtors a separate writing or writings confirming and evidencing this agreement, as well as declarations or other similar instruments as deemed necessary by the Reorganized Debtors to support the agreement, claims or defenses at issue, upon request for the same by the Reorganized Debtors.

(i)     Based on its financial inability, in large part due to the fact that it is receiving no rents from the retail tenants of the Shopping Center, to address the immediate

problems associated with certain rights, claims or actions RRLP has or may have against one or more of the Carmen Parties, the lien holders described in Exhibit "F" (the "Lien Holders"), Beeding or BLG, including without limitation, any claim relating to the documents described in Sections 5(i)(1)-(5), below (collectively referred to herein as the "Claims"), and given the fact that the Debtors might be irreparably harmed if such immediate problems are not addressed, RRLP hereby assigns the Claims to the Reorganized Debtors, which agree to address the Claims as expeditiously as possible, and further agree to use all reasonable efforts to resolve the Claims short of formal litigation.  Although the intention of the parties is that this paragraph constitute a legally binding assignment given by the RRLP Parties to the Reorganized Debtors, the RRLP parties nonetheless agree to provide a separate writing confirming and evidencing this assignment, as well as declarations or other similar instruments as deemed necessary to support the assignment or Claims assigned, upon request for the same.  In the event that the assignment intended by this Section is deemed ineffective for any reason or otherwise challenged, RRLP agrees that the Reorganized Debtors, as limited partner of RRLP, are authorized and empowered to bring suit or demand in the stead of RRLP on a derivative basis to enforce any such Claims intended to be assigned by this Section.  In furtherance of this Section 5(i), the RRLP Parties hereby authorize the Reorganized Debtors to:

    (1) obtain copies of all of the Carmen Parties bills and records, including, but not limited to invoices, cancelled checks, deposit slips, evidence of wire transfers, bank statements, computerized book keeping records, leases, contracts, correspondence, documents related to the Carmen Mortgage, etc. ("Carmen Bills and Records"), pertaining to all of the Carmen Parties' activities, undertakings, rights and obligations, with respect to RRLP, the Shopping Center and the Carmen Mortgage, including, but not

limited to the Carmen's Parties collection of rents and Common Area Maintenance contributions paid by the tenants of the Shopping Center and the Carmen Parties use thereof, the Carmen Parties failure to make certain repairs to the Shopping center, and the management and leasing of the Shopping Center by the affiliate of the Carmen Properties, etc. Although the intention of the parties is that this paragraph constitutes a legally binding consent given by the RRLP Parties to the Reorganized Debtors, the RRLP Parties nonetheless agree to provide a separate writing confirming and evidencing this consent, as well as declarations or other similar instruments as deemed necessary to obtain the Carmen Bills and Records, upon request for the same;

(2) discuss and negotiate with the Carmen Parties a settlement of any dispute RRLP may have with the Carmen Parties which relates to the Carmen Bills and Records or any of the Carmen Parties' activities, undertakings, rights and obligations, with respect to RRLP, the Shopping Center and the Carmen Mortgage;

(3)  obtain copies of all of BLG's and/or Beeding's bills and financial records, including, but not limited to invoices, cancelled checks, deposit slips, evidence of wire transfers, bank statements, computerized book keeping records, etc. ("BLG Bills and Financial Records"), pertaining to all of the activities, pursuant to which BLG and, or Beeding represented RRLP, or acted, in any capacity, as RRLP's agent, commencing from the date BLG was first engaged by RRLP or FRRC through the later of the date of this Stipulation and the termination of such engagement, including but not limited to those bills and financial records relating to RRLP's litigations and/or dealings with the JS Parties, the settlement of RRLP's litigations with the JS Parties, the use of the proceeds of the settlement of RRLP's litigations with the JS Parties, Nancy Armano, the Debtors,

US Bank, the Circuit Court of Macomb County, Michigan, funds held and, or released by the Circuit Court of Macomb County, Michigan, the Carmen Parties, the Carmen Mortgage, the use of the Carmen Mortgage loan proceeds, MCANY, the Wrap Note, the Wrap Mortgage, the Intermediate Lease, C & R Maintenance, Inc., a Michigan corporation, d/b/a Rizzo Services, Kmart Corporation, the collection of rents and Common Area Maintenance contributions paid by the tenants of the Shopping Center to BLG and/or Beeding or otherwise, expenses relating to RRLP and the Shopping Center paid by BLG and/or Beeding or otherwise, the arbitrations undertaken in New York City, maintenance and repairs conducted at the Shopping Center, and all contracts, written, executed, or otherwise, with respect to maintenance and repairs conducted at the Shopping Center, etc. Although the intention of the parties is that this paragraph constitutes a legally binding consent given by the RRLP Parties to the Reorganized Debtors, the RRLP Parties nonetheless agree to provide a separate writing confirming and evidencing this consent, as well as declarations or other similar instruments as deemed necessary to obtain the BLG Bills and Financial Records, upon request for the same;

(4) discuss and negotiate with BLG and/or Beeding a settlement of any dispute RRLP may have with BLG and/or Beeding which relate to the BLG Bills and Financial Records or any of the activities, undertakings, rights and obligations of BLG and/or Beeding, with respect to RRLP, the Shopping Center or the Encumbrances;

(5) obtain copies of all of Lien Holders' bills and records, including, but not limited to invoices, cancelled checks, deposit slips, evidence of wire transfers, bank statements, computerized book keeping records, leases, contracts, correspondence, etc.

("Lien Holders' Bills and Records"), pertaining to all of the Lien holders' liens, activities, undertakings, rights and obligations, etc., with respect to RRLP, the Shopping Center and the Lien Holders' liens. Although the intention of the parties is that this paragraph constitutes a legally binding consent given by the RRLP Parties to the Reorganized Debtors, the RRLP Parties nonetheless agree to provide a separate writing confirming and evidencing this consent, as well as declarations or other similar instruments as deemed necessary to obtain the Lien Holders' Bills and Records, upon request for the same;

(6)    discuss and negotiate with the Lien Holders a settlement of any dispute RRLP may have with the Lien Holders which relates to their liens or the Lien Holders' Bills and Records and/or any of the Lien Holders' activities, undertakings, rights and obligations, etc., with respect to RRLP, the Shopping Center or the Encumbrances.

(j)    The RRLP Parties acknowledge that the EA Option is cancelled and any rights or obligations that were to accrue to EA as a consequence of the EA Option are null and void. The RRLP Parties further warrant and represent that, other than the EA Option and the Option evidenced by this paragraph, there are no other outstanding options relating to the purchase of all or a part of RRLP's interest in the Shopping Center and that future discovery of the existence of such other option would be a material breach of this Stipulation by RRLP and would constitute a fraud on the Bankruptcy Court. The purchase price of the Shopping Center shall be the sum of One Million Seven Hundred Seventy Two Thousand Five Hundred Dollars ($1,772,500.00), lawful money of the United States of America, plus an additional sum, to be approved by the Debtors, their successors or assigns, in their sole discretion, necessary to satisfy

or assume the valid liens and encumbrances set forth Exhibit "F," hereto, or which may otherwise encumber the Shopping Center at the time this Option is exercised, including without limitation any payment due from RRLP to satisfy its obligations owing to a certain $510,000.00 Intermediate Net Lease Security Deposit assigned by FRRC to MCANY in or around 1985. If said additional sum is needed, all of the said purchase price and additional sums are to be paid upon closing of title by certified check or bank draft drawn upon a bank authorized to do business in the United States of America. The closing of any purchase by the Reorganized Debtors shall take place not later than seven (7) business days after notice is given to RRLP, by facsimile, first class mail, overnight courier or hand delivery to: Thomas L. Armano, Jr., c/o Malfalda Armano, 192 Massachusetts Avenue, Congers, New York 10920, or such other address as set forth in future written notice by RRLP to counsel for the Debtors, which notice specifically references this Stipulation and this Option. The closing shall occur at the offices of Debtors' counsel or such other place and time identified in the notice of exercise of this Option. The purchase price shall be subject to adjustments for taxes, insurance premiums, and lease payments for leases permitted. All closing costs, including the costs of examination of title, title insurance, and transfer fees and taxes, but excluding the costs of legal or other representation (which costs shall be borne by the party incurring the same), shall be the responsibility of the Debtors, their successors or assigns. This Option to shall be deemed to have commenced on the date of the Final Order, and shall have a remaining term of eighteen (18) months from such date. This Option shall be extended for an additional eighteen (18) months at the sole discretion of the Debtors, their successors or assigns, upon a payment made to RRLP in the amount $25,000 at any time during the initial Option term. Upon closing of title in connection with the exercise of this Option, RRLP shall convey to the Reorganized Debtors good and marketable title to the

Shopping Center, which premises are more particularly described in Schedule "1" hereto, which Schedule forms a material part of this agreement. As further consideration for the grant by RRLP of the option set forth in this Section 5(j), the Debtors agree to assign to RRLP $25,000 from the JS Payment, but no obligation to pay this additional $25,000 shall accrue until the Final Order has been issued. Immediately upon the Debtors obtaining actual possession of the entire JS Payment, the $25,000 shall be paid to RRLP or RRLP's designee. Although the intention of the parties is that this paragraph constitute a legally binding option given by the RRLP Parties to the Reorganized Debtors, the RRLP parties nonetheless agree to provide a separate writing confirming and evidencing this Option, as well as declarations or other similar instruments as deemed necessary by the Reorganized Debtors to support this Option, upon request for the same by the Reorganized Debtors. The failure by the RRLP Parties to deliver documents evidencing a transfer of title to the Reorganized Debtors at any closing upon an exercise of this Option shall entitle the Reorganized Debtors to seek, upon *ex parte* application, a mandatory injunction requiring the delivery of the same, as well as a preliminary injunction against any transfer of title or interest or encumbrance of the same to or by any party other than the Reorganized Debtors pending a transfer of title pursuant to this Option. Such mandatory or preliminary injunctive relief may be issued by any court having subject matter jurisdiction over the subject of this Option, including without limitation, the United States Bankruptcy Court located in the Southern District of New York.

6. <u>Dismissal of Adversary Proceedings</u>. Within seven days after the issuance of a Final Order, the parties to this Stipulation, through their respective attorneys, agree that the Bankruptcy Court may issue a dismissal with prejudice of all of the claims, counterclaims and/or cross-claims asserted in the Turnover Adversary and the Avoidance Adversary, other than any

such claims asserted against the Beeding Parties or Carmen Parties which may then be pending, with each party to bear its, his or her own costs and attorneys' fees.

7.   <u>General Releases</u>.

7.1   <u>Release by the Debtors and Nancy Armano</u>.  The Debtors and Nancy Armano, on behalf of themselves and any other parties, persons or entities claiming under or through them, including their respective predecessors, successors, parents, affiliates, subsidiaries, divisions, assigns, representatives, attorneys, agents, officers, directors (including Nancy Armano, Louis E. Cherico and William J. Peper III), investors, and employees, and each of them, does hereby relieve, release and forever discharge each of the RRLP Parties, the JS Parties, Nancy Armano, the MCANY Parties and the EA Parties, its, his or her respective predecessors, successors, parents, affiliates, subsidiaries, divisions, representatives, attorneys, agents, officers, directors, investors, employees, assigns, heirs, and each of them, of and from any and all losses, debts, liabilities, demands, costs (including but not limited to court costs and attorneys' fees), expenses, rights, damages, suits, actions and causes of action of whatever kind or nature, whether known or unknown, at law or in equity, certain or contingent, liquidated or unliquidated, that the Debtors or Nancy Armano, or their predecessors, successors, parents, affiliates, subsidiaries, divisions, assigns, representatives, attorneys, agents, officers, directors (including Nancy Armano, Louis E. Cherico and William J. Peper III), investors, and employees, and each of them, may have against any one or more of the RRLP Parties, the JS Parties, the MCANY Parties and the EA Parties as of the date of this Stipulation.

7.2   <u>Release of the Debtors and Nancy Armano</u>.  Each of the RRLP Parties, the JS Parties, the MCANY Parties and the EA Parties on behalf of itself, herself or himself, and any other parties, persons or entities claiming under or through them, including each of its, his or her

respective predecessors, successors, parents, affiliates, subsidiaries, divisions, representatives, attorneys, agents, officers, directors, investors, employees, assigns, heirs, and each of them, does hereby relieve, release and forever discharge the Debtors and Nancy Armano, and each of their predecessors, successors, parents, affiliates, subsidiaries, divisions, assigns, representatives, attorneys, agents, officers, directors (including Nancy Armano, Louis E. Cherico and William J. Peper III), investors and employees, and each of them, of and from any and all losses, debts, liabilities, demands, costs (including but not limited to court costs and attorneys' fees), expenses, rights, damages, suits, actions and causes of action of whatever kind or nature, whether known or unknown, at law or in equity, certain or contingent, liquidated or unliquidated, that any one of the RRLP Parties, the JS Parties, the MCANY Parties or the EA Parties, or its, his or her respective predecessors, successors, parents, affiliates, subsidiaries, divisions, representatives, attorneys, agents, officers, directors, investors, employees, assigns, heirs, and each of them, may have against the Debtors, Nancy Armano or any of their predecessors, successors, parents, affiliates, subsidiaries, assigns, representatives, attorneys, agents, officers, directors (including Nancy Armano, Louis E. Cherico and William J. Peper III), investors and employees as of the date of this Stipulation.

       7.3    <u>Release by the RRLP Parties</u>.  Each of the RRLP Parties, on behalf of itself, herself or himself and any other parties, persons or entities claiming under or through them, including each of its, his or her respective predecessors, successors, parents, affiliates, subsidiaries, divisions, representatives, attorneys, agents, officers, directors, investors, employees, assigns, heirs, and each of them, does hereby relieve, release and forever discharge the JS Parties, the MCANY Parties and the EA Parties and each of its, his or her respective predecessors, successors, parents, affiliates, subsidiaries, divisions, representatives, attorneys,

agents, officers, directors, investors, employees, assigns, heirs, and each of them, of and from any and all losses, debts, liabilities, demands, costs (including but not limited to court costs and attorneys' fees), expenses, rights, damages, suits, actions and causes of action of whatever kind or nature, whether known or unknown, at law or in equity, certain or contingent, liquidated or unliquidated, that any one of the RRLP Parties, or its, his or her respective predecessors, successors, parents, affiliates, subsidiaries, divisions, representatives, attorneys, agents, officers, directors, investors, employees, assigns, heirs, and each of them, may have against the JS Parties, the MCANY Parties and the EA Parties and each of its, his or her respective predecessors, successors, parents, affiliates, subsidiaries, representatives, attorneys, agents, officers, directors, investors, employees, assigns or heirs as of the date of this Stipulation.

7.4     Release by the JS Parties.  Each of the JS Parties, on behalf of itself, herself or himself and any other parties, persons or entities claiming under or through them, including each of its, his or her respective predecessors, successors, parents, affiliates, subsidiaries, divisions, representatives, attorneys, agents, officers, directors, investors, employees, assigns, heirs, and each of them, does hereby relieve, release and forever discharge the RRLP Parties, the MCANY Parties and the EA Parties and each of its, his or her respective predecessors, successors, parents, affiliates, subsidiaries, divisions, representatives, attorneys, agents, officers, directors, investors, employees, assigns, heirs, and each of them, of and from any and all losses, debts, liabilities, demands, costs (including but not limited to court costs and attorneys' fees), expenses, rights, damages, suits, actions and causes of action of whatever kind or nature, whether known or unknown, at law or in equity, certain or contingent, liquidated or unliquidated, that any one of the JS Parties, or its, his or her respective predecessors, successors, parents, affiliates, subsidiaries, divisions, representatives, attorneys, agents, officers, directors, investors,

employees, assigns, heirs, and each of them, may have against the RRLP Parties, the MCANY Parties and the EA Parties and each of its, his or her respective predecessors, successors, parents, affiliates, subsidiaries, representatives, attorneys, agents, officers, directors, investors, employees, assigns or heirs as of the date of this Stipulation.

7.5     <u>Release by the MCANY Parties</u>.  Each of the MCANY Parties, on behalf of itself, herself or himself and any other parties, persons or entities claiming under or through them, including each of its, his or her respective predecessors, successors, parents, affiliates, subsidiaries, divisions, representatives, attorneys, agents, officers, directors, investors, employees, assigns, heirs, and each of them, does hereby relieve, release and forever discharge the JS Parties, the RRLP Parties and the EA Parties and each of its, his or her respective predecessors, successors, parents, affiliates, subsidiaries, divisions, representatives, attorneys, agents, officers, directors, investors, employees, assigns, heirs, and each of them, of and from any and all losses, debts, liabilities, demands, costs (including but not limited to court costs and attorneys' fees), expenses, rights, damages, suits, actions and causes of action of whatever kind or nature, whether known or unknown, at law or in equity, certain or contingent, liquidated or unliquidated, that any one of the MCANY Parties, or its, his or her respective predecessors, successors, parents, affiliates, subsidiaries, divisions, representatives, attorneys, agents, officers, directors, investors, employees, assigns, heirs, and each of them, may have against the JS Parties, the RRLP Parties and the EA Parties and each of its, his or her respective predecessors, successors, parents, affiliates, subsidiaries, representatives, attorneys, agents, officers, directors, investors, employees, assigns or heirs as of the date of this Stipulation.

7.6     <u>Release by the EA Parties</u>.  Each of the EA Parties, on behalf of itself, herself or himself and any other parties, persons or entities claiming under or through them, including each

of its, his or her respective predecessors, successors, parents, affiliates, subsidiaries, divisions, representatives, attorneys, agents, officers, directors, investors, employees, assigns, heirs, and each of them, does hereby relieve, release and forever discharge the JS Parties, the MCANY Parties and the RRLP Parties and each of its, his or her respective predecessors, successors, parents, affiliates, subsidiaries, divisions, representatives, attorneys, agents, officers, directors, investors, employees, assigns, heirs, and each of them, of and from any and all losses, debts, liabilities, demands, costs (including but not limited to court costs and attorneys' fees), expenses, rights, damages, suits, actions and causes of action of whatever kind or nature, whether known or unknown, at law or in equity, certain or contingent, liquidated or unliquidated, that any one of the EA Parties, or its, his or her respective predecessors, successors, parents, affiliates, subsidiaries, divisions, representatives, attorneys, agents, officers, directors, investors, employees, assigns, heirs, and each of them, may have against the JS Parties, the MCANY Parties and the RRLP Parties and each of its, his or her respective predecessors, successors, parents, affiliates, subsidiaries, representatives, attorneys, agents, officers, directors, investors, employees, assigns or heirs as of the date of this Stipulation.

7.7 <u>Release of Unknown Claims</u>. In connection with the releases in Section 7.1-7.6, the parties agree and recognize that, by executing this Stipulation, they each do hereby expressly waive all rights afforded by any statute (such as Section 1542 of the Civil Code of the State of California) that limits the effect of the releases in Section 7.1-7.6 with respect to unknown claims. For reference purposes, Section 1542 of the Civil Code of the State of California provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially effected his or her settlement with the debtor.

7.8     Claims Against Beeding and/or BLG.  Notwithstanding anything to the contrary in this document or in the releases set forth in Section 7, no claims, known or unknown, against Beeding or BLG or his or its respective predecessors, successors, parents, affiliates, subsidiaries, divisions, representatives, attorneys, agents, officers, directors, investors, employees, assigns or heirs are intended to be released by any of the terms of this Stipulation and no such release should be inferred or implied by Section 7 of this Stipulation.

7.9     Claims Against the Carmen Parties.  Notwithstanding anything to the contrary in this document or in the releases set forth in Section 7, no claims, known or unknown, against the Carmen Parties or their respective predecessors, successors, parents, affiliates, subsidiaries, divisions, representatives, attorneys, agents, officers, directors, investors, employees, assigns or heirs are intended to be released by any of the terms of this Stipulation and no such release should be inferred or implied by Section 7 of this Stipulation.

7.10    Claims Against the Lien Holders.  Notwithstanding anything to the contrary in this document or in the releases set forth in Section 7, no claims, known or unknown, against the Lien Holders or their respective predecessors, successors, parents, affiliates, subsidiaries, divisions, representatives, attorneys, agents, officers, directors, investors, employees, assigns or heirs are intended to be released by any of the terms of this Stipulation and no such release should be inferred or implied by Section 7 of this Stipulation.

8.      Breach.  The rights and remedies of the parties to this Stipulation are cumulative and not alternative.  Neither the failure nor delay by any party in exercising any right, power or privilege under this Stipulation will operate as a waiver of such right, power and privilege.  No single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of any such right, power, or privilege or the exercise of any other right, power or privilege.  Further, nothing in this Stipulation is intended to impair any legal or equitable right of any party to enforce any of the terms of this Stipulation by any means, including without limitation an action for damages, injunctive relief or specific performance.

9. <u>Governing Law and Continuing Jurisdiction</u>.  This Stipulation is governed by New York law, without regard to the choice of law provisions of the state.  The parties to this Stipulation agree that the Bankruptcy Court shall have continuing jurisdiction to enforce this Stipulation or resolve controversies which might arise in connection with this Stipulation and each party agrees to submit to personal jurisdiction in the Bankruptcy Court for this purpose.

10. <u>Attorneys' Fees and Costs</u>**.**  Each party to this Stipulation will bear its own costs, expenses and attorneys' fees incurred in connection with the preparation and execution of this Stipulation and exhibits hereto.

11. <u>Entire Agreement</u>.  This Stipulation is the final written expression and the complete and exclusive statement of all of the agreements, conditions, promises and covenants between the parties to this Stipulation with respect to the subject matter hereof, and supersedes all prior or contemporaneous agreements, negotiations, representations, understandings and discussions between the parties and their respective employees, representatives, and counsel with respect to the subject matter covered hereby.  Any amendments to this Stipulation must be in writing specifically referring to this Stipulation and signed by duly authorized representatives of the parties hereto.

12. <u>Recitals and Exhibits</u>.  The recitals and exhibits to this Stipulation are an integral part of the parties' settlement and are hereby incorporated and made a part of this Stipulation.

13. <u>Worldwide Effect</u>.  This Stipulation is effective worldwide.

14. <u>Warranty of Authority</u>.  Each person signing this Stipulation on behalf of a party warrants that he is authorized to do so and to thereby bind said party to the Stipulation.

15. <u>Severability</u>.  Each party hereto expressly warrants that it is not their intent to violate any public policy, statutory or common laws; that if any sentence, paragraph, clause or combination of the same is in violation of any public policy, state or federal law, such sentence, paragraph, clause or combination of same will be inoperative and this Stipulation will otherwise remain binding upon the parties hereto.

16.    <u>No admissions</u>.  Neither the negotiation nor the execution of this Stipulation, nor any of its provisions, are to be construed as an admission by any of the parties hereto, or by their respective attorneys, officers, directors, employees or agents, regarding the truth of any matter in controversy.

17.    <u>Counterpart and Facsimile Signatures</u>.  This Stipulation may be executed in counterparts and delivered via facsimile, which each counterpart being deemed equally authentic with the original of such counterpart.

18.    <u>Headings</u>.  The headings are inserted only for purposes of reference.  Such headings shall not affect the scope, meaning or intent of the provisions of this Stipulation, nor shall such headings otherwise be given any legal effect.

19.    <u>Binding Agreement/Successors</u>.  This Stipulation shall bind the directors, officers, employees, parent corporations, subsidiaries, affiliates, predecessors, licenses, agents, investors, successors, heirs and assigns, including successors and assigns of any portion of the business of a party.  This Stipulation also shall inure to the benefit of each party, its directors, officers, employees, parent corporations, subsidiaries, affiliates, predecessors, licensees, agents, investors, successors, heirs and assigns.

20.    <u>Mutual Drafting</u>.  The parties to this Stipulation represent, acknowledge and warrant that they have been represented in negotiations for, and the preparation of, this Stipulation by counsel of their own choosing, that they each have read this Stipulation or has had it read or explained by counsel, that they understand and are fully aware of its contents and of its legal effect, that they are voluntarily entering into this Stipulation after consultation with counsel and that the persons signing this Stipulation have been duly authorized to do so.  Any presumption that uncertainties in a contract are interpreted against the party causing an uncertainty to exist is hereby waived by all parties.

21.    <u>Attorneys' Fees to Prevailing Party if Breach</u>.  In the event that any party to this Stipulation breaches any of the terms of this Stipulation, the prevailing party in any action with

respect to such breach is entitled to recover its, his or her attorneys' fees and costs with respect to any successful claim for breach of this Stipulation.

[Signature pages follow]

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of June 26, 2006.

SCARBOROUGH-ST JAMES
MANAGEMENT CORPORATION

By: _____
     Nancy P. Armano
     President

FIRST RICHBOROUGH
REALTY CORPORATION

By: _____
     Nancy P. Armano
     President

NANCY P. ARMANO, an individual

_____
     Nancy P. Armano

RICHMOND REALTY LIMITED
PARTNERSHIP

By:_____
     Thomas L. Armano, Jr.
     General Partner

THOMAS L. ARMANO, JR., an individual

_____
     Thomas L. Armano, Jr.

33

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of June 26, 2006.

SCARBOROUGH-ST JAMES
MANAGEMENT CORPORATION


By:_____
     Nancy P. Armano
     President


FIRST RICHBOROUGH
REALTY CORPORATION


By:_____
     Nancy P. Armano
     President

NANCY P. ARMANO, an individual


_____
     Nancy P. Armano


RICHMOND REALTY LIMITED
PARTNERSHIP

By:_____
     Thomas L. Armano, Jr.
     General Partner


THOMAS L. ARMANO, JR., an individual

_____
     Thomas L. Armano, Jr.

33

DEBRA KARAS-DARLAND, an individual

_Debra Karas-Darland_____
Debra Karas-Darland


JACOBSON-STEWART RICHMOND
PROPERTIES PARTNERSHIP

By:_____
      Joseph Jacobson,
      Managing Partner


JOSEPH JACOBSON, an individual


_____
      Joseph Jacobson


NANCY JACOBSON, an individual


_____
      Nancy Jacobson


EURO AMERICAN REALTY
INVESTORS LTD.


By:_____


STEPHEN S. COHEN, an individual


_____
      Stephen S. Cohen

DEBRA KARAS-DARLAND, an individual


_____
Debra Karas-Darland


JACOBSON-STEWART RICHMOND
PROPERTIES PARTNERSHIP

By: _____
Joseph Jacobson,
Managing Partner


JOSEPH JACOBSON, an individual

_____
Joseph Jacobson


NANCY JACOBSON, an individual

_____
Nancy Jacobson


EURO AMERICAN REALTY
INVESTORS LTD.


By: _____


STEPHEN S. COHEN, an individual


_____
Stephen S. Cohen

DEBRA KARAS-DARLAND, an individual

_____
     Debra Karas-Darland

JACOBSON-STEWART RICHMOND
PROPERTIES PARTNERSHIP

By:_____
     Joseph Jacobson,
     Managing Partner

JOSEPH JACOBSON, an individual

_____
     Joseph Jacobson

NANCY JACOBSON, an individual

_____
     Nancy Jacobson

EURO AMERICAN REALTY
INVESTORS LTD.

By: *[signature]*
     *As Attorney-in-fact*

STEPHEN S. COHEN, an individual

*[signature]*
_____
     Stephen S. Cohen

LARRY DRIES, an individual

_____
Larry Dries

MCANY OF RICHMOND FUND II
LIMITED PARTNERSHIP, a New
York limited partnership,


By: _____
        Benedict Silverman
        President of Silben
        Management Corporation, a
        Delaware Corporation
Its:    Managing General Partner


BENEDICT SILVERMAN, an individual


_____
        Benedict Silverman

35

LARRY DRIES, an individual

_____
    Larry Dries

MCANY OF RICHMOND FUND II
LIMITED PARTNERSHIP, a New
York limited partnership,

By: _____
    Benedict Silverman
    President of Silben
    Management Corporation, a
    Delaware Corporation
Its:   Managing General Partner

BENEDICT SILVERMAN, an individual

_____
    Benedict Silverman

State of **New York** )
                    ss:
County of **Westchester** )

On the **19th** day of **July** in the year 20**06** before me, the undersigned, a Notary Public in and for said State, personally appeared Nancy P. Armano, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

LOUIS E. CHERICO
Notary Public, State of New York
No. 4606035
Qualified in Westchester County
Term Expires March 30, 20**08**

State of _____ )
                    ss:
County of _____ )

On the _____ day of _____ in the year 20__ before me, the undersigned, a Notary Public in and for said State, personally appeared Thomas L. Armano, Jr., personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

State of _____ )
                    ss:
County of _____ )

On the _____ day of _____ in the year 20__ before me, the undersigned, a Notary Public in and for said State, personally appeared Debra Karas-Darland, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

36

State of _____  )
                                                 ss:
County of _____  )

On the _____ day of _____ in the year 20__ before me, the undersigned, a Notary Public in and for said State, personally appeared Nancy P. Armano, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public


State of *New York*  )
                                            ss:
County of *Rockland*  )

On the *14* day of *July* in the year 20*06* before me, the undersigned, a Notary Public in and for said State, personally appeared Thomas L. Armano, Jr., personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____            ROBERT STORMS
Notary Public                                    Notary Public, State of New York
                                                         No. 01ST6113633
                                                 Qualified in Rockland County
                                          Commission Expires August 2, *2008*


State of _____  )
                                                 ss:
County of _____  )

On the _____ day of _____ in the year 20__ before me, the undersigned, a Notary Public in and for said State, personally appeared Debra Karas-Darland, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

State of _____ )
                             ss:
County of _____ )

On the _____ day of _____ in the year 20__ before me, the undersigned, a Notary Public in and for said State, personally appeared Nancy P. Armano, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

State of _____ )
                             ss:
County of _____ )

On the _____ day of _____ in the year 20__ before me, the undersigned, a Notary Public in and for said State, personally appeared Thomas L. Armano, Jr., personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

State of Massachusetts )
                             ss:
County of Essex )

On the 20th day of July in the year 2006 before me, the undersigned, a Notary Public in and for said State, personally appeared Debra Karas-Darland, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

MEGAN B. CASSIDY
Notary Public
Commonwealth of Massachusetts
My Commission Expires
November 3, 2011

36

State of _Michigan_ )
                          ss:
County of _Oakland_ )

On the _11th_ day of _July_ in the year 20_06_ before me, the undersigned, a Notary Public in and for said State, personally appeared Joseph Jacobson, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_Johnanna Bowman_
Notary Public

                                       JOHNANNA BOWMAN
                              Notary Public, Wayne County, MI
                             My Commission Expires Aug. 24, 2008

State of _Michigan_ )
                          ss:
County of _Oakland_ )

On the _11th_ day of _July_ in the year 20_06_ before me, the undersigned, a Notary Public in and for said State, personally appeared Nancy Jacobson, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_Johnanna Bowman_
Notary Public

                                       JOHNANNA BOWMAN
                              Notary Public, Wayne County, MI
                             My Commission Expires Aug. 24, 2008

State of _____ )
                                ss:
County of _____ )

On the _____ day of _____ in the year 20___ before me, the undersigned, a Notary Public in and for said State, personally appeared Steven S. Cohen, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

State of _____ )
                            ss:
County of _____ )

On the _____ day of _____ in the year 20__ before me, the undersigned, a Notary Public in and for said State, personally appeared Joseph Jacobson, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public


State of _____ )
                            ss:
County of _____ )

On the _____ day of _____ in the year 20__ before me, the undersigned, a Notary Public in and for said State, personally appeared Nancy Jacobson, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public


~~State of~~ *Province* *Ontario* )
                            ss:
~~County~~ *City* of *Toronto* )

On the *14th* day of *July* in the year 20*06* before me, the undersigned, a ~~Notary Public in and for said State~~ *Commissioner*, personally appeared Steven S. Cohen, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

Bridie Dries, a Commissioner, etc.,
Province of Ontario, for Cohen Law Office,
Barristers and Solicitors.
Expires October 17, 2008

37

*Province*
~~State~~ of _Ontario_ )
                        ) ss:
*City*
~~County~~ of _Toronto_ )

On the *14* day of *July* in the year 20*06* before me, the undersigned, a ~~Notary Public in and~~ *Commissioner* ~~for said State,~~ personally appeared Larry Dries, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

Bridle Dries, a Commissioner, etc.,
Province of Ontario, for Cohen Law Office,
Barristers and Solicitors.
Expires October 17, 2008


State of _____ )
                         ) ss:
County of _____ )

On the _____ day of _____ in the year 20__ before me, the undersigned, a Notary Public in and for said State, personally appeared Benedict Silverman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


_____
Notary Public

State of _CT_ )

ss:

County of _Litchfield_ )

BENEDICT SILVERMAN

On the _12_ day of _July_ in the year 20_06_ before me, the undersigned, a Notary Public in and for said State, personally appeared ~~Larry Dries~~, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_William McDougall IV_
Notary Public

**WILLIAM McDOUGALL IV**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES 11/30/2010

State of _____ )

ss:

County of _____ )

On the _____ day of _____ in the year 20__ before me, the undersigned, a Notary Public in and for said State, personally appeared Benedict Silverman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

## SCHEDULE 1

### Legal Description of Shopping Center Property

Land situated in the City of Richmond, County of Macomb, and State of Michigan, to-wit:

PARCEL 1: Part of Lots 29, 31, 32 and 33, Supervisor's Plat No. 1, according to the plat thereof, as recorded in Liber 16, Page 44 of Plats, Macomb County Records, described as commencing at a point 609.10 feet South 88 degrees 49 minutes 30 seconds West 163.22 feet; thence North 58 degrees 14 minutes West from the Southeast corner of said Lot 33 and thence extending North 58 degrees 14 minutes West 289.46 feet along the Northeasterly line of Main Street, (65 feet wide); thence North 04 degrees 06 minutes 54 seconds East 399.35 feet; thence North 85 degrees 53 minutes 06 seconds West 27.00 feet; thence North 04 degrees 06 minutes 54 seconds East 288.00 feet; thence South 85 degrees 53 minutes 06 seconds East 384.00 feet; thence South 04 degrees 06 minutes 54 seconds West 288.0 feet; thence North 85 degrees 53 minutes 06 seconds West 222.70 feet; thence South 04 degrees 06 minutes 54 seconds West 423.25 feet; thence North 88 degrees 49 minutes 30 seconds East 122.95 feet; thence South 04 degrees 16 minutes 14 seconds West 121.79 feet to the point of beginning.

PARCEL 2: Part of Lots 29, 31, 32 and 33 of Supervisor's Plat No. 1, according to the plat thereof, as recorded in Liber 16, Page 44 of Plats, Macomb County Records, described as commencing at a point 609.10 feet South 88 degrees 49 minutes 30 seconds West 452.68 feet; thence North 58 degrees 14 minutes West from the Southeast corner of said Lot 33 and thence extending North 58 degrees 14 minutes West 342.07 feet along the Northeasterly line of Main Street (66 feet wide); thence North 04 degrees 06 minutes 54 seconds East 528.60 feet; thence South 85 degrees 53 minutes 06 seconds East 276.00 feet; thence South 04 degrees 06 minutes 54 seconds West 288.00 feet; thence South 85 degrees 53 minutes 06 seconds East 27.00 feet; thence South 04 degrees 06 minutes 54 seconds West 399.35 feet to the point of beginning.

PARCEL 3: Part of Lots 29, 31 and 33, Supervisor's Plat No. 1, according to the plat thereof, as recorded in Liber 16, Page 44 of Plats, Macomb County Records, described as beginning at the Southeast corner of Lot 33; thence South 88 degrees 49 minutes 30 seconds West 66.0 feet along South line of Lot 33; thence North 00 degrees 46 minutes 20 seconds West 210.0 feet; thence South 89 degrees 49 minutes 30 seconds West 792.95 feet; thence North 04 degrees 06 minutes 54 seconds East 423.25 feet; thence South 85 degrees 53 minutes 06 seconds East 222.70 feet; thence North 04 degrees 06 minutes 54 seconds East 288 feet; thence South 85 degrees 53 minutes 06 seconds East 578.55 feet; thence South 00 degrees 46 minutes 20 seconds East 844.36 feet along East line of Lots 31 and 33 to the point of beginning.

PARCEL 4: Part of Lot 33, Supervisor's Plat No. 1, according to the plat thereof, as recorded in Liber 16, Page 44 of Plats, Macomb County Records, described as commencing at the Southeast corner of said Lot; thence South 88 degrees 49 minutes 30 seconds West 331.00 feet along the South lot line to the point of beginning; thence continuing South 88 degrees 49 minutes 30 seconds West 278.10 feet along said Lot line; thence North 58 degrees 14 minutes West 128.72 feet along the Northeasterly right of way line of Main Street M-19; thence North 88 degrees 49 minutes 30 seconds East 336.62 feet; thence North 00 degrees 46 minutes 28 seconds West 140.0 feet; thence North 88 degrees 49 minutes 30 seconds East 50.00 feet; thence South 00 degrees 46 minutes 28 seconds East 210.00 feet to the point of beginning.

Commonly known as: 67500 Main Street
Part of Parcel I.D. No. 06-01-426-026, as to Parcel 1
Part of Parcel I.D. No. 06-01-426-026, as to Parcel 2
Parcel I.D. No. 06-01-426-027, as to Parcel 3
Parcel I.D. No. 06-01-426-028, as to Parcel 4

**EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
_____

In re:

SCARBOROUGH-ST. JAMES CORPORATION, et al.,

Debtors.

_____

Chapter 11

Case No. 03-17966 (JMP)

(Jointly Administered)

**ORDER GRANTING MOTION OF SCARBOROUGH-ST. JAMES CORPORATION (1) TO ENFORCE THE ADEQUATE PROTECTION DIRECTIVES WITHIN THIS COURT'S APRIL 20, 2007 AMENDED ORDER AUTHORIZING DEBTOR RICHMOND REALTY LIMITED PARTNERSHIP TO INCUR POSTPETITION SECURED INDEBTEDNESS; AND (2) TO REIMBURSE THE ESTATES' EXPENSES**

This matter came before the Court upon motion, dated April 30, 2007 (the "Motion") by Debtors Scarborough-St James Corporation ("SSJC"), for an order, pursuant to section 105 of title 11 of the United States Code (the "Bankruptcy Code"), enforcing the adequate protection provisions of this Court's April 20, 2007 Amended Order by which it authorized Richmond Realty Limited Partnership ("RRLP") to obtain post petition secured indebtedness (the "DIP Financing Order") and by which RRLP was required to pay $450,000 to SSJC as adequate protection and seeking payment of SSJC's expenses in bringing the Motion. The Court (a) having reviewed (i) the Motion, (ii) the Declaration of Michael T. Conway in support of the Motion, and (iii) Exhibits annexed thereto and (b) having considered any and all opposition to the Motion; and

The Court being fully advised in the premises and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; the Court hereby finds that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334;  (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) notice of the Motion

was sufficient under the circumstances; (iv) the Motion is in full compliance with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of this Court; and (v) that this Order is in the best interest of the Debtors and their estates and creditors.

Accordingly, it is hereby ORDERED as follows:

1.     The Motion is GRANTED.

2.     RRLP is directed to immediately transfer $450,000 to SSJC.

3.     RRLP and SSJC shall endeavor to enter into a stipulation for the payment of SSJC's attorney's fees and costs incurred in connection with the making of the Motion; in the event no such Stipulation is possible, SSJC shall submit a declaration setting for such fees and costs and a proposed order for the payment of the same.

4.     The requirement pursuant to Local Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York that the Debtors file a memorandum of law in support of the Motion is hereby waived.

Dated: New York, New York
       _____

                                          _____
                                          James M. Peck
                                          United States Bankruptcy Judge

**EXHIBIT C**

LeCLAIR RYAN, a Professional Corporation
Michael T. Conway, Esq.
830 Third Avenue, 5th Floor
New York, NY 10022
Telephone: (212) 430-8032
Facsimile:  (212) 430-8062

Attorneys for Debtors Scarborough-St James Corporation
  and First Richborough Realty Corporation

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————————
                                                        Chapter 11
In re:


SCARBOROUGH-ST. JAMES CORPORATION, et al.,    Case No. 03-17966 (JMP)

                        Debtors.                (Jointly Administered)


———————————————————————————

**NOTICE OF MOTION OF SCARBOROUGH-ST. JAMES CORPORATION
(1) TO ENFORCE THE ADEQUATE PROTECTION DIRECTIVES WITHIN THIS
COURT'S APRIL 20, 2007 AMENDED ORDER AUTHORIZING DEBTOR
RICHMOND REALTY LIMITED PARTNERSHIP TO INCUR POSTPETITION
SECURED INDEBTEDNESS; AND (2) TO REIMBURSE THE ESTATES' EXPENSES**

        PLEASE TAKE NOTICE that on _____, ___, 2007, at ___:00 __.m, Scarborough-

St James Corporation ("SSJC") will bring a motion (the "Motion"), before the Honorable James

M. Peck, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern

District of New York, Alexander Hamilton Customs House, One Bowling Green, New York,

New York 10004-1408, for an Order, pursuant to section 105 of title 11 of the United States

Code (the "Bankruptcy Code"), enforcing the adequate protection provisions of this Court's

April 20, 2007 Amended Order by which it authorized Richmond Realty Limited Partnership

("RRLP") to obtain post petition secured indebtedness (the "DIP Financing Order") and by

which RRLP was required to pay $450,000 to SSJC as adequate protection and seeking payment of SSJC's expenses in bringing the Motion.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must be in writing, conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Bankruptcy Court, and be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (General Order M-242 and the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court), by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format (with a hard copy delivered directly to Chambers) and shall be served in accordance with General Order M-242 and the Case Management Order and upon: (i) the Office of the United States Trustee, 33 Whitehall Street, New York, New York 10004 (Attention: Paul K. Schwartzberg, Esq.); and (ii) counsel for SSJC, LeClair Ryan, a Professional Corporation, 830 Third Avenue, Fifth Floor, New York, New York 10022, with a copy to Judge Peck's Chambers, so as to be actually received by no later than 10:00 a.m. (EST) on _____ ___, 2007.

Dated: April 30, 2007
   New York, New York

        LeCLAIR RYAN, a Professional Corporation


        By: /s/ Michael T. Conway_____
        Michael T. Conway (MC2224)
        830 Third Avenue, 5th Floor
        New York, NY 10022
        Telephone: (212) 430-8032
        Facsimile: (212) 430-8062

        Attorneys for Scarborough-St James Corporation
         and First Richborough Realty Corporation