WESTERMAN BALL EDERER MILLER
  &amp; SHARFSTEIN, LLP
170 Old Country Road, Suite 400
Mineola, New York 11501
(516) 622-9200
Jeffrey A. Miller, Esq. (JM 6352)
Eric G. Waxman III, Esq. (EW 0498)
*Counsel for Madison Realty Capital L.P. and*
*67500 South Main Street, Richmond LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:

                                                    Chapter 11

SCARBOROUGH-ST. JAMES CORPORATION,     Case No. 03-17966 (JMP) and
et al.,                                                     Case No. 03-17967 (JMP)
                                                            (Jointly Administered)

                                 Debtors.
-------------------------------------------------------------------X
MADISON REALTY CAPITAL, L.P. and
67500 SOUTH MAIN STREET, RICHMOND LLC,


                                 Plaintiffs,          Adv. Pro. No. 09-_____ (JMP)

   - against -

SCARBOROUGH-ST. JAMES CORPORATION,

                                 Defendant.
-------------------------------------------------------------------X

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

## **COMPLAINT**

       Plaintiffs Madison Realty Capital, L.P. ("Madison") and 67500 South Main Street, Richmond, LLC ("67500"), by their attorneys Westerman Ball Ederer Miller & Sharfstein, LLP, as and for their complaint against the defendant herein, respectfully allege as follows:

## THE PARTIES

1. Madison is a Delaware limited partnership duly authorized to conduct business in the State of New York.

2. 67500 is a Delaware limited partnership duly authorized to conduct business in the State of New York.

3. Upon information and belief, defendant Scarborough-St. James Corporation ("SSJC") is a Delaware corporation with its principal place of business in New York, New York.

## FACTUAL BACKGROUND

### The Sale/Leaseback and the Intermediate Agreement

4. SSJC previously owned a shopping center located at 67300-67500 Main Street, Richmond, Michigan (the "Shopping Center").

5. Upon information and belief, in 1985, SSJC entered into a sale/leaseback transaction with its affiliate, Richmond Realty Limited Partnership ("RRLP").

6. By this transaction, SSJC sold the Shopping Center to RRLP and then "rented" the property from RRLP pursuant to an Intermediate Net Lease, which was amended in June 2006 by an Amended and Restated Intermediate Lease (the "Intermediate Agreement", a copy of which is attached as Exhibit "A").

7. The Intermediate Agreement was not a true, bona fide lease of real property.

8. Rather, the Intermediate Agreement was a financing transaction.

9. SSJC did not and does not occupy space at the Shopping Center.

2

10. The Intermediate Agreement was not recorded in the Macomb County, Michigan real property records until April 17, 2009. *See* Liber 19749, page 632.

**The Bankruptcies**

11. On December 17, 2003, SSJC filed a petition under Chapter 11 of the United States Bankruptcy Code in this Court.

12. On November 22, 2006, RRLP filed a petition under Chapter 11 of the United States Bankruptcy Code in this Court.

13. RRLP's bankruptcy was jointly administered with that of SSJC until RRLP's case was dismissed on December 4, 2008.

14. SSJC's bankruptcy case is, upon information and belief, still pending and SSJC is operating pursuant to a Plan of Reorganization confirmed by this Court on June 11, 2008 (the "Plan").

**The DIP Order**

15. At the time of RRLP's bankruptcy, RRLP owned the Shopping Center.

16. In conjunction with the bankruptcies of RRLP and SSJC, Madison provided debtor-in-possession ("DIP") financing to RRLP in the amount of $3,100,000.00. This Court approved the DIP loan by Order dated February 21, 2007, which was amended by this Court's Order dated April 20, 2007 (the "DIP Order"), a copy of which is attached as Exhibit "B".

17. The DIP Order granted the debtors' joint motion dated January 25, 2007 ("DIP Motion") for an order authorizing the post-petition secured financing. A copy of the DIP Motion is attached as Exhibit "C". The DIP Motion expressly contemplated the assignment of, and security interest in, all current and future leases, rents, and other

3

income related to the Shopping Center.  *See* DIP Motion at ¶ 45 and Exhibit A, Loan Agreement, at page 1.

18.   Pursuant to the DIP Order, RLLP executed and delivered to Madison a promissory note in the original principal amount of $3,100,000.00 (the "DIP Note"), a copy of which is attached as Exhibit "D".

19.   The DIP Note was secured by a mortgage on the Shopping Center (the "DIP Mortgage"), a copy of which is attached as Exhibit "E".

20.   The DIP Mortgage was recorded in the real property records of Macomb County, Michigan on May 14, 2007.  *See* Liber 18700, page 317.

21.   The DIP Note and obligations were also secured by an unconditional security interest in the Shopping Center's leases and rents and by a perfected priming lien, senior in all respects to any and all present and future liens, claims, interests or encumbrances, if any, "including, without limitation, any and all pre-petition and post-petition liens and security interests held by Warren Bank, Carmen, SSJC, FRRC, MCANY II, BLG, C&R or RGE, as further described in the DIP Loan Agreement." *See* DIP Order at ¶ 6 (c).

22.   The DIP Order was recorded in the real property records of Macomb County, Michigan on May 14, 2007.  *See* Liber 18700, page 298.

23.   Pursuant to the DIP Order, this Court retained "exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Interim Order . . . or other injunctive relief requested." *See* DIP Order at ¶ 17(b).

24.   The DIP Order also provided that the Court would maintain jurisdiction even after a dismissal of RRLP's bankruptcy case "for purposes of enforcing the liens,

security interests and Superpriority Claims of the Lenders, as the case may be." *Id*. at ¶ 23.

25. Pursuant to SSJC's Plan, this Court also retained jurisdiction to determine all motions and matters filed after the effective date of the Plan, to determine all controversies that may arise in connection with the enforcement of the Plan and in connection with any agreement made as part of the Plan, and to hear other matters related to the Plan and not inconsistent with Chapter 11. *See* Order Confirming the Plan (attached as part of Exhibit "F") at p. 4 and Plan (attached as part of Exhibit "F") at pp. 20-22.

**The Defaults, the September 2008 Agreement and the Foreclosure**

26. The DIP loan went into default, and Madison initiated foreclosure proceedings under Michigan law. The foreclosure sale was originally scheduled for September 26, 2008.

27. On September 24, 2008, SSJC and Madison entered into an agreement (the "September 2008 Agreement") which, among other things, postponed the foreclosure sale for four weeks to allow SSJC time to try to satisfy its obligations to Madison. A copy of the September 2008 Agreement is attached as Exhibit "G".

28. Pursuant to the September 2008 Agreement, SSJC waived all claims against Madison including all claims relating to Madison's enforcement of the loan documents and Madison's rights to collect the rents at the Shopping Center.

29. On or about October 23, 2008, SSJC commenced an adversary proceeding in this Court seeking to enjoin the foreclosure sale ("October 2008 Action").

30. In its accompanying motion for an immediate stay of the foreclosure sale, SSJC asserted that it would suffer irreparable harm if the foreclosure sale proceeded. *See* motion dated October 22, 2008, at paragraph 2, a copy of which (without exhibits) is attached as Exhibit "H"; *see also* Declaration of Michael T. Conway dated October 22, 2008, at paragraph 2, a copy of which is attached as Exhibit "I".

31. SSJC was not the owner of the Shopping Center. Its sole interest related to the preservation of the Intermediate Agreement.

32. No injunction was issued.

33. On October 24, 2008, Madison foreclosed on the Shopping Center and immediately assigned its bid to plaintiff 67500.

34. On or about January 13, 2009, after SSJC's attempts to block the foreclosure failed, the parties filed a stipulation of dismissal of the October 2008 Action, a copy of which is attached as Exhibit "J".

35. The Shopping Center was not redeemed by RRLP or any other party within the redemption period allowed by Michigan law.

36. 67500 is now the fee simple owner of the Shopping Center.

### **Defendant's Misconduct**

37. After the redemption period expired, 67500 began contacting tenants at the Shopping Center and directing them to pay rents to 67500 in accordance with its rights.

38. SSJC interfered with 67500's rights to collect the rents at the Shopping Center.

39. In an attempt to avoid the jurisdiction of this Court -- which had already entered the DIP Order and denied SSJC's prior efforts to block the foreclosure -- SSJC purported to commence an arbitration proceeding before JAMS (the "Arbitration Proceeding"). A copy of SSJC's Demand for Arbitration Before JAMS (the "Arbitration Demand") is attached as Exhibit "K". The Arbitration Demand invoked an arbitration clause in the Intermediate Agreement.

40. In addition, SSJC commenced a proceeding in the New York County Supreme Court to obtain injunctive relief in aid of the purported arbitration (the "State Court Proceeding"). The documents that SSJC filed in the State Court Proceeding are attached collectively as Exhibit "L".

41. In the State Court Proceeding, SSJC alleges, among other things, that it has the right to collect rents from tenants at the Shopping Center despite: (i) SSJC's express waiver of such claims in the September 2008 Agreement; (ii) the provision of the DIP Order granting Madison priming liens on all of RRLP's assets, which liens were senior to all liens, claims, encumbrances and interests, including those held by SSJC; and (iii) the extinguishment of any subordinate rights SSJC had upon the foreclosure of the DIP Mortgage.

42. Since this Court has exclusive jurisdiction over this matter, plaintiffs will timely remove the State Court Proceeding to this Court.

## JURISDICTION AND VENUE

43. This Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334, the Standing Order of Referral of Cases to Bankruptcy Judges of the District Court for the Southern District of New York dated July 19, 1994

7

(Ward, Acting C.J.), 11 U.S.C. §§ 105(a), 362, 363, 364, 1109, 1141, 1142, Federal Rules of Bankruptcy Procedure Rules 7065 and this Court's DIP Financing Order dated April 20, 2007.

44. This is a core proceeding pursuant to 28 U.S.C. §§ 1334 and 157. The statutory grounds for the relief sought herein are 11 U.S.C. §§ 105(a), 362, 363, 364, 1109, 1141, 1142 and Bankruptcy Rule 7056. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FIRST CLAIM FOR RELIEF

45. Plaintiffs incorporate the foregoing paragraphs of this complaint by reference as if the same were set forth herein at length.

46. A genuine controversy exists over whether plaintiffs are bound by the arbitration clause in the Intermediate Agreement.

47. Plaintiffs seek and are entitled to a declaratory judgment declaring that plaintiffs are not bound by the arbitration clause in the Intermediate Agreement.

48. Plaintiffs have no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

49. Plaintiffs incorporate the foregoing paragraphs of this complaint by reference as if the same were set forth herein at length.

50. It was the express intent of the parties to grant Madison a priming lien superior to, among other liens, claims, encumbrances and interests, the liens, claims, encumbrances and interests of SSJC.

51. The DIP Order provides that Madison was granted priming liens superior to the liens, claims, encumbrances and interests of SSJC.

52. A genuine controversy exists over the intent of the parties and the meaning of the DIP Order.

53. Plaintiffs seek and are entitled to a declaratory judgment declaring that Madison's liens were superior to the liens, claims, encumbrances and interests of SSJC, including SSJC's interests under the Intermediate Agreement.

54. Plaintiffs have no adequate remedy at law.

### THIRD CLAIM FOR RELIEF

55. Plaintiffs incorporate the foregoing paragraphs of this complaint by reference as if the same were set forth herein at length.

56. A genuine controversy exists over whether SSJC's interest in the Shopping Center pursuant to the Intermediate Agreement was extinguished by Madison's foreclosure on the DIP Mortgage.

57. Plaintiffs seek and are entitled to a declaratory judgment declaring that the foreclosure by Madison of its priming lien has foreclosed and extinguished any liens, interests and encumbrances of SSJC in the Shopping Center including, without limitation, the Intermediate Agreement, as such liens, interests and encumbrances of SSJC were subordinate to Madison's priming lien.

58. Plaintiffs have no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF

59. Plaintiffs incorporate the foregoing paragraphs of this complaint by reference as if the same were set forth herein at length.

60. A genuine controversy exists over whether the Intermediate Agreement is a true lease or a disguised financing transaction.

61. Plaintiffs seek and are entitled to a declaratory judgment declaring that the Intermediate Agreement is not a lease but is a disguised financing transaction calculated to provide tax attributes to the parties thereto and, therefore, SSJC is not entitled to the protections of section 365(h) of the Bankruptcy Code.

62. Plaintiffs have no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF

63. Plaintiffs incorporate the foregoing paragraphs of this complaint by reference as if the same were set forth herein at length.

64. A genuine controversy exists over whether pursuant to the September 2008 Agreement, SSJC waived, among other things, any rights it had to collect the rents at the Shopping Center.

65. Plaintiffs seek and are entitled to a declaratory judgment declaring that SSJC waived any rights it had to collect rents at the Shopping Center.

66. Plaintiffs have no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF

67. Plaintiffs incorporate the foregoing paragraphs of this complaint by reference as if the same were set forth herein at length.

68. As set forth in the DIP Order, this Court has exclusive jurisdiction to hear and determine issues relating to the DIP loan documents, including any issues concerning the effect of Madison's foreclosure on the Intermediate Agreement.

69. A genuine controversy exists relating to the effect and enforceability of the DIP Order.

70. Plaintiffs seek and are entitled to a declaratory judgment staying and/or dismissing the Arbitration Proceeding, and declaring that this Court has exclusive jurisdiction over this dispute.

71. Plaintiffs have no adequate remedy at law.

**WHEREFORE**, plaintiffs respectfully request that this Court enter judgment in their favor as follows:

(a) on the first claim for relief, for a declaratory judgment declaring that plaintiffs are not bound by the arbitration clause in the Intermediate Agreement;

(b) on the second claim for relief, for a declaratory judgment declaring that Madison's liens were superior to the liens, claims, encumbrances and interests of SSJC including SSJC's interests under the Intermediate Agreement;

(c) on the third claim for relief, for a declaratory judgment declaring that the foreclosure by Madison of its priming lien has foreclosed and extinguished any liens, interests and encumbrances of SSJC in the Shopping Center including, without limitation, the Intermediate Agreement, as such liens, interests and encumbrances of SSJC were subordinate to Madison's priming lien;

(d) on the fourth claim for relief, for a declaratory judgment declaring that the Intermediate Agreement is not a lease but is a disguised financing transaction calculated to provide tax attributes to the parties thereto and,

therefore, SSJC is not entitled to the protections of section 365(h) of the Bankruptcy Code;

(e) on the fifth claim for relief, for a declaratory judgment declaring that SSJC waived any rights it had to collect rents at the Shopping Center;

(f) on the sixth claim for relief, for a declaratory judgment staying and/or dismissing the Arbitration Proceeding, and declaring that this Court has exclusive jurisdiction over this dispute; and

(g) on all claims for relief, for all damages incidental to defendant's conduct, plus the costs, counsel fees, disbursements and expenses incurred by plaintiffs in this matter, together with such other and further relief as the Court deems just, proper and equitable.

Dated: June 3, 2009
Mineola, New York

WESTERMAN BALL EDERER MILLER & SHARFSTEIN, LLP

By: __/s/ Jeffrey A. Miller_____
    Jeffrey A. Miller, Esq. (JM 6352)
    Eric G. Waxman III, Esq. (EW 0498)
    170 Old Country Road, Suite 400
    Mineola, New York 11501
    (516) 622-9200
    *Attorneys for Plaintiffs*

00204722